Filing # 9259525 Electronically Filed 01/16/2014 04:39:09 PM

IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT, IN AND FOR DUVAL
COUNTY, FLORIDA

CASE NO.:
DIVISION:

**BUNOR CRAWFORD,**
**QASHAWNDA LIGHTNER (CRAWFORD),**
**CHRIST'IAN WALLACE**

         **PLAINTIFFS,**

vs.

**CLUB AT CHARTER POINTE APARTMENTS.**
**SAN MIGUEL MANAGEMENT LIMITED PARTNERSHIP**

         **DEFENDANT.**
_____/

## COMPLAINT

COMES NOW Bunor Crawford, Qashawanda Lightner (Crawford), and Christ'ian
Wallace (herein after "Plaintiffs") by and through their undersigned counsel, and sues Defendant,
Club at Charter Pointe Apartments and San Miguel Management Limited Partnership (herein
after "Defendants") and alleges the following:

### GENERAL ALLEGATIONS

1.    This is an action for damages exceeding the sum of $15,000.00, exclusive of costs,
      interest and attorney's fees, and is otherwise within this Court's jurisdiction.

2.    Plaintiffs, Bunor Crawford and Qashawanda Lightner (Crawford) are residents of the
      State of Florida, over 18 years of age and are sui juris.

3.    Plaintiff, Christ'ian Wallace is the minor child of Bunor Crawford and Qashawanda
      Lightner.

4.    Plaintiffs are residents of Duval County, Florida. Venue is proper in the county where
      this suit is filed.

5.    Defendant Club at Charter Pointe Apartments is an apartment complex located 5502
      University Club Blvd. N., Jacksonville, FL 32277.

1


EXHIBIT
A

6.    Defendant San Miguel Management Limited Partnership is a Texas corporation registered and doing business in the state of Florida.

7.    The events giving rise to this cause of action occurred in Duval County, Florida.

8.    Plaintiffs have been damaged severely by the actions of Defendant.

9.    On or about December 28, 2012, Plaintiffs entered a lease agreement with Defendants. A copy of the lease is attached as an Exhibit.

10.   Prior to signing the lease and accepting the keys, Plaintiffs verbally-forewarned Defendants of Plaintiffs' allergies.

11.   On or about the first week of January 2013, Plaintiffs alerted the main office and showed property manager Mary Anne Sharkey, a big round light stain coming through the carpet in the front living room. Defendant suggested that Plaintiff be moved to another unit.

12.   On or about the second week of January 2013, Plaintiffs began not feeling well.

13.   Plaintiffs' symptoms persisted for about a month and got progressively worst.

14.   On or about February 17, 2013, Chris Barela, CEO of Superior Carpet Care & Restoration came to our apartment and conducted his test. He concluded from his work order contract that there was mold in the Plaintiffs' apartment and the mold had been present in the home before Plaintiffs' tenancy began.

15.   On or about February 19, 2013, Plaintiffs went to stay at a hotel after being advised by a physician that it was unhealthy to reside in the apartment.

16.   On or about March 8, 2013, Plaintiffs delivered a 7-day Notice of Noncompliance to Landlord to Defendants via fax. A copy of the 7-day Notice of Noncompliance is attached as an Exhibit.

17.   On or about March 15, 2013, Plaintiffs delivered a Notice of Termination of Rental Agreement to Defendants via fax. A copy of the 7-day Notice of Termination is attached as an Exhibit.

18.   On or about March 19, 2013, an inspection of the residence was conducted by County Inspector and mold and/or mildew was found in the residence. A copy of the Inspector's report is attached an Exhibit.

## COUNT I- BREACH OF CONTRACT

19.   Plaintiff realleges paragraphs 1 through 18 above and incorporates them herein.

20. Plaintiff entered into a lease agreement with Defendants on December 28, 2012

21. Clause 24 of the lease agreement states in pertinent part that Defendants "would comply with requirements of applicable building, housing, and health codes.

22. Clause 31 outlines the responsibilities of the owner and or its agent as it relates to the lease agreement.

23. Defendants failed to substantially comply with applicable laws regarding safety, sanitation, and fair housing.

24. Defendants moved Plaintiffs into an apartment with a mold infestation.

25. Mold infestations posed severe health threats Plaintiffs and made the apartment unsanitary.

26. Plaintiffs have suffered damages due to Defendants' breach.

## COUNT II- FRAUD

27. Plaintiff realleges paragraphs 1 through 18 above and incorporates them herein.

28. Defendants falsely represented that the apartment it was renting Plaintiffs was free of mold and mildew.

29. Defendants knew that the apartment had a mold issue and actively concealed the issue from Plaintiffs'.

30. Defendants' concealed the mold issue intentionally to induce Plaintiffs' into leasing the apartment.

31. Plaintiffs' justifiably relied on the Defendants' representation that the apartment was mold and mildew free.

32. Plaintiffs suffered mental, physical, and emotional harm as a result of Defendants' actions.

## COUNT III-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

33. Plaintiffs realleges paragraphs 1 through 18 above and incorporates them herein.

34. Defendant intentionally subjected Plaintiffs to an unsanitary environment knowing Plaintiffs' predisposition to mold and mildew.

35. Defendants' actions were extreme and/ or outrageous due to the fact Defendant was made aware of Plaintiffs' susceptibility to mold.

3

36. Plaintiffs suffered and continues to suffer emotional and physical distress as a result of Defendants' action

### COUNT IV-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37. Plaintiffs reallege paragraphs 1 through 18 above and incorporates them here in.

38. Defendant had a duty to use reasonable care to avoid causing emotional distress to Plaintiffs.

39. Defendants breached their duties to Plaintiffs by negligently subjecting Plaintiffs to an unsanitary environment knowing Plaintiffs' predisposition to mold and mildew.

40. Defendants' actions were extreme and/ or outrageous due to the fact Defendants were made aware of Plaintiffs' susceptibility to mold.

41. Plaintiffs suffered and continue to suffer emotional and physical distress as a result of Defendants' action

42.

WHEREFORE Plaintiffs respectfully asks this Court to award:

    A. $500,000 compensatory and consequential damages

    B. 1,500,000 punitive damages

    C. Any other such relief this Court deems just.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury on all matters provided for by law.

s/Jonathan Ross

Jonathan Ross, Esquire
FL Bar No.: 0094302
The Ross Firm P.A.
4914 North Main St.
Jacksonville, FL 32206
Telephone: (904) 415-7744
Fax: (866) 922-1207
Primary Email: Service@therossfirmpa.com
Secondary: Jonathan.ross@therossfirmpa.com
Attorney for PLAINTIFFS

4




## Apartment Lease Contract

Date of Lease Contract:   __December 28, 2012__
(when the Lease Contract is filled out)

This is a binding document. Read carefully before signing.

### Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) (list all people signing the Lease Contract): __Bunor Crawford, Qashawanda Lightner__

and us, the owner: __CH-B Club at Charter Pointe, L.L.C.__

(name of apartment community or title holder). You've agreed to rent Apartment No. __282__, at __5501 University Club Blvd, N__ (street address) in __Jacksonville__ (city), Florida, __32217__ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

The ☐ Owner or ☒ Manager of these apartments is __San Miguel Management, LP__

whose address is __5501 University Club Blvd, North Jacksonville, FL 32277__ . Such person or company is authorized to receive notices and demands in the landlord's behalf.

A lease termination notice must be given in writing. Notice to the landlord must be delivered to the management office at the apartment community or any other address designated by management as follows: __5501 University Club Blvd, North Jacksonville, FL 32277__ . Notice to the tenant must be delivered to the Resident's address as shown above.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract): __Christian Wallace 6/9/200__

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than __14__ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __29th__ day of __December__, __2012__, and ends at midnight the __20th__ day of __December__, __2013__. This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days written notice of termination or intent to move-out as required by paragraph 37. If the number of days isn't filled in, at least 30 days notice is required. In the event this Lease Contract renews month-to-month, you or we may terminate a month-to-month tenancy by giving the other party written notice at least __days prior to the end of the monthly rental period. (If the number of days isn't filled in, at least 30 days notice is required to terminate a month-to-month tenancy.

Failure to Provide Proper End of Term Notice or Intent to Move-Out. In the event you fail to provide us with the required number of days of written notice of termination or intent to move-out at the expiration of the lease term, or any renewal thereafter, as required by this paragraph and paragraph 37, you acknowledge, understand and agree that you shall be liable to us for liquidated damages in THE SUM OF $ __674.00__ (equal to 1 month's rent) in accordance with Fla. Stat. §83.575(2).

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__, due on or before the date this Lease Contract is signed.

Any security deposit or advance rent you paid is being held in one of the following three ways as indicated below (landlord check one option):

☒ 1. In a separate NON-INTEREST bearing account for your benefit in the following bank: __BBVA Compass Bank__

whose address is __3560 University Club Blvd, North Jacksonville, FL 32211__ ;OR

☐ 2. In a separate INTEREST bearing account for your benefit in the following bank _____

If an interest bearing account, you will be entitled to receive and collect interest in an amount of at least 75 percent of the annualized average interest rate payable on such account or interest at the rate of 5 percent per year, simple interest, whichever the landlord elects.

☐ 3. In a commingled account at the following bank _____

whose address is _____

provided that the landlord posts a surety bond with the county or state, as required by law, and pays you interest on your security deposit or advance rent at the rate of 5 percent per year simple interest.

Initials of Resident. Resident acknowledges receiving a copy of F.S. 83.49(3) which provides as follows:

(a) Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

*This is a notice of my intention to impose a claim for damages in the amount of _____ upon your security deposit, due to _____. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to (landlord's address).*

If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the security deposit.

(b) Unless the tenant objects to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages.

(c) If either party institutes an action in a court of competent jurisdiction to adjudicate the party's right to the security deposit, the prevailing party is entitled to receive his or her court costs plus a reasonable fee for his or her attorney. The court shall advance the cause on the calendar.

(d) Compliance with this section by an individual or business entity authorized to conduct business in this state, including Florida-licensed real estate brokers and salespersons, shall constitute compliance with all other relevant Florida Statutes pertaining to security deposits held pursuant to a rental agreement or other landlord-tenant relationship. Enforcement personnel shall look solely to this section to determine compliance. This section prevails over any conflicting provisions in chapter 475 and in other sections of the Florida Statutes, and shall operate to permit licensed real estate brokers to disburse security deposits and deposit money without having to comply with the notice and settlement procedures contained in s. 475.25(1)(d).

**5. KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __2__ mailbox key(s), and _____ other access devices for _____. Your apartment will be ☐ furnished or ☒ unfurnished: See paragraph 9, Locks and Latches.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ __674.00__ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☐ at our online payment site, or
☐ at _____

Prorated rent of $ __65.22__ is due for the remainder of the (check one): ☒ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless

12282012120390982L11030153

__Bunor Crawford, Qashawanda Lightner__
©2012, National Apartment Association, Inc. • 11/2012, Florida

Page 1 of 7

BeC                                        BeC

authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the __3rd__ day of the month, you'll pay an initial late charge of $ __50.00__ plus a late charge of $ __5.00__ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ __50.00__ for each returned check or rejected electronic payment, plus initial and daily late charges from the date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

We and you agree that the failure to pay rent timely or the violation of the animal restrictions results in added administrative expenses and added costs to us, the same as if we had to borrow money to pay the operating costs of the property necessary to cover such added costs. We both agree that the late fee that this would result may be charged during the lease term if the charge applies to all residents. We also both agree that the amount of late rent and animal violation fees charged are reasonable estimates of the administrative expenses, costs, and damages we would incur in such instances.

All of the foregoing charges will be considered to be additional rent.

**7. UTILITIES.** We'll pay for the following items, if checked:

☐ water     ☐ gas     ☐ electricity     ☐ master antenna
☐ wastewater  ☐ trash  ☐ cable TV  ☐ other _____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. Residents shall not heat the apartment using gas-operated stoves or ovens which were intended for use in cooking.

Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Landlord, they will be allocated first to non-rent charges and to rent last. Failure to maintain utilities as required herein is a material violation of the Lease and you may incur a termination of tenancy, eviction and/or any other remedies under the Lease and Florida law.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property and/or personal injuries due to theft, fire, rain, flood, hurricane, wind damage, water damage, pipe leaks and the like.

Additionally, you are (check one) ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

**What You Are Now Requesting.** You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.

☒ keyed deadbolt lock     ☒ doorviewer
☒ keyless deadbolt         ☒ sliding door pinlock
☒ sliding door bar

Payment for rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which you misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

---

| Special Provisions and "What If" Clauses |
|---|

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

A 60 Day written notice with intent to vacate is required and will only be accepted on the first of each month. Rent $ 624.00 utilities $ 50.00 total per month $ 674.00

See any additional special provisions.

**11. EARLY MOVE-OUT.** Unless modified by an addendum, if you:

(1) move out without paying rent in full for the entire lease term or renewal period; or
(2) move out at our demand because of your default; or
(3) are judicially evicted.

You will be liable for all rent owed at the time and as it becomes due under the terms of your lease agreement until the apartment is re-rented.

**12. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment or apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the lease term or renewal period: (1) damage to doors, windows, screens, or any other property damage to the apartment or the premises; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** All property in the apartment or common areas associated with the apartment is (unless exempt under state statute) subject to a contractual lien to secure payment of delinquent rent. The lien will attach to your property or your property will be subject to the lien at the time you surrender or abandon the premises. For this purpose, "apartment" includes common areas associated with the apartment and interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

Removal After Surrender or Abandonment. We or law officers may, at our discretion, remove, dispose and/or store all property remaining in the apartment or in common areas (including any vehicles you or any

occupant or guest owns or uses) if you surrender, are judicially evicted, or abandon the apartment (see definitions in paragraph 42).

THE LANDLORD IS NOT REQUIRED TO COMPLY WITH § 715.104, BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

Storage. We may store, but have no duty to store, property removed after surrender, eviction, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing and selling any property.

**14. FAILING TO PAY RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, or any other rent due under this lease we may end your right of occupancy and recover damages, attorney's fees, court costs, and other lawful charges.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 16. If, at least 5 days before the advance notice referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

1228201210391 0FL11030153

Bunor Crawford, Qashavanda Lightner

©2012, National Apartment Association, Inc.—11/2012, Florida

Page 2 of 7

Bec

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later:

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is

expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**27. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

---

### While You're Living in the Apartment

**18. COMMUNITY POLICIES OR RULES.** You, and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate (1) the use of patios, balconies, and porches (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude, and/or for "No Trespass" from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence. In another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**20. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; engaging in criminal activity that threatens the health, safety, or right to peaceful enjoyment of others in or near the apartment community (regardless of arrest or conviction); storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

**21. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, recreational vehicles, and storage devices by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31, 37, or by separate

addendum, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school-withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**23. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and

(2) you are either (i) given change-of-station orders to permanently change the local area, (ii) deployed with a military unit for 90 days or more, (iii) relieved or released from active duty, (iv) after entering into the Lease Contract you receive military orders requiring you to move into government quarters or you become eligible to live in and opt to move into government quarters, (v) receive temporary duty orders, temporary change of station orders, or state active duty orders in an area 35 miles or more from the location of the rental premises, provided such orders are for a period exceeding 60 days.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after we receive the written notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. After your move out, we'll return your security deposit, less lawful deductions. If you terminate the Lease Contract 14 or more days before occupancy or damages of any kind will be assessable. If you or any co-resident is a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 6.

Smoke Detectors. We'll furnish smoke detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector malfunctions to us. Neither you nor others may disable smoke detectors. If your damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us under state law for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

Casualty Loss. We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, snow but we may remove any amount with or without notice. Unless we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security

.1228201210391IFZ.11030IZ53

Bruce Crawford, Qashawanda Lightimar
©2012, National Apartment Association, Inc.—11/2012, Florida                Page 3 of 7

Bcc.

personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Fire Protection.** Please check only one box ☐ Fire protection is NOT available or ☐ Fire protection IS AVAILABLE. Description of fire protection available (not applicable unless the box is checked):

☑ Sprinkler System in apartment
☐ Sprinkler System in common areas
☑ Smoke detector
☑ Carbon monoxide detector
☑ Fire extinguisher
☐ Other (Describe):

**Building; Housing, or Health Codes.** We will comply with the requirements of applicable building, housing, and health codes. If there are no applicable building, housing, or health codes, we will maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads, and the plumbing in reasonable working condition. However, we are not responsible for the repair of conditions created or caused by the negligent or wrongful act or omission of you, a member of your family, or any other person on the premises, in the apartment, or in the common areas of the apartment community with your consent.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing you must not perform any repair, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements and/or added fixtures to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**Pest Control.** We will make reasonable provisions for the extermination of rats, mice, roaches, ants, wood destroying organisms, and bed bugs. If you are required to vacate the premises for such extermination, we shall not be liable for damages, but rent shall be abated. If you are required to vacate in order to perform pest control or extermination services, you will be given seven (7) days written notice of the necessity to vacate, and you will not be required to vacate for more than four (4) days. We may still enter your apartment as provided in Paragraph 28 of this Lease and F.S. 83.53 or upon 12 hours notice to perform pest control or extermination services which do not require you to vacate the premises. You must comply with all applicable provisions of building, housing and health codes and maintain the apartment and adjacent common areas in a clean and sanitary manner. You must properly dispose of and promptly remove all of your garbage so as to prevent foul odors, unsanitary conditions, or infestation of pests and vermin in your apartment, adjacent common areas (such as breezeways), and other common areas of the apartment community.

**Waterbeds.** You are allowed to have a waterbed or flotation bedding systems provided it complies with any applicable building codes and provided that you carry flotation or renter's insurance which covers any damages which occur as a result of using the waterbed or flotation bedding system. You must provide us with a copy of the policy upon request. You must also name us as an additional insured at our request.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility

lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire, catastrophic damage, extermination issues, mold and mildew or any habitability issues whatsoever is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**27. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed any or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal; and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or made notice has been given); or showing apartment to governmental inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**29. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds; and deduction itemizations of multiple residents will comply, with paragraph 41.

1228201210391ZFLL1030153

Page 4 of 7

Buritor Crawford, Qeshawanda Lightner
© 2012, National Apartment Association, Inc.—11/2012, Florida



---

## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign the Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new

Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25;
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above or other material provisions of the Lease, you may terminate this Lease Contract and exercise other remedies under state statute only as follows:

(a) you must make a written request for repair, maintenance, or remedy of the condition to us, specifying how we have failed to comply with Florida law or with the material provisions of this lease and indicating your intention to terminate the lease if the violation is not corrected within seven (7) days after delivery of the notice;
(b) after receiving the request, we have a reasonable time to repair or remedy the condition, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
(c) if our failure to comply with Florida law or material provisions of the rental agreement is due to causes beyond our control and we have made and continue to make every reasonable effort to correct the failure to comply, you may also exercise other statutory remedies.

All rent must be current at the time you give us notice of noncompliance.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or gives deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; or (6) any illegal drugs or paraphernalia are found in your apartment.

Termination of Rental Agreement - Your Failure to Pay Rent Due. If you default by failing to pay rent when due and the default continues for three (3) days, not counting Saturday, Sunday, and court-observed legal holidays, after delivery of a written demand for payment of the rent or possession of the premises, we may terminate the rental agreement. Termination of this lease for non-payment of rent, or termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

Termination of Rental Agreement - Your Failure to Comply with F.S. 83.52 or Material Provisions of the Lease.

(1) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD NOT BE GIVEN AN OPPORTUNITY TO CURE or if your non-compliance CONSTITUTES A SECOND OR CONTINUING NON-COMPLIANCE WITHIN TWELVE (12) MONTHS OF A SIMILAR VIOLATION, we may terminate the lease by delivering written notice specifying the nature of the non-compliance and our intention to terminate the lease. Upon receiving such a lease termination notice without opportunity to cure or resulting a second violation within 12 months, you will have seven (7) days from delivery of the notice to vacate the apartment and premises. Examples of non-compliance which are without opportunity to cure include, but are not limited to, destruction, damage, or misuse of our or other residents' property by your intentional acts or a subsequent or continued unreasonable disturbance.

(2) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than to pay rent due), and the non-compliance is of a nature that YOU SHOULD be given an opportunity to cure it, we may deliver a written notice to you specifying the nature of the non-compliance and notifying you that unless the non-compliance is corrected within seven (7) days of delivery of the notice, we may terminate the lease. If you fail to correct the violation within seven (7) days of receiving such notice or if you repeat some conduct or conduct of a similar nature within a twelve (12) month period, we may terminate your lease without giving you any further opportunity to cure the non-compliance as provided above. Examples of non-compliance in which we will give you an opportunity to cure the violation include, but are not limited to, unauthorized pets, guests, or vehicles, parking in an unauthorized manner, or failing to keep the apartment and premises clean and sanitary. We will also have all rights under Florida law and this lease to tow or remove improperly parked vehicles for these violations.

Termination of this lease for non-compliance with F.S. 83.52 or material provisions of the lease, termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by one hundred percent (100%) over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the Lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

Other Remedies. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection-agency fees will be added if you don't pay all sums by that deadline. Unless modified by Addendum, you will also be liable for all of our actual damages related to your breach of the Lease Contract.

Choice of Remedies and Mitigation of Damages. If you move out early, you'll be subject to paragraph 11 and all other remedies. If we might possession of the apartment as a result of your breach of the lease, or because you surrendered possession of the apartment, or because you abandoned possession of the apartment, or because we obtained possession through eviction proceedings, unless modified by Addendum, we may either (a) treat the lease as terminated and re-take possession FOR OUR OWN ACCOUNT; (b) re-take possession of the apartment FOR YOUR ACCOUNT and attempt in good faith to re-let it on your behalf; or (c) take no action to obtain possession or re-let the apartment and continue to collect rent from you as it comes due. If we take possession of the apartment for our own account, then you will have no further liability for rents under the remainder of the lease. If we take possession of the apartment for your account and attempt to re-let it, you will remain liable for the difference between the rental remaining due under the lease and the amount we are able to recover by making a good faith effort in re-letting the premises on your behalf. We are not required to make an election of which remedies we choose to pursue nor notify you of which remedies we will select.

## General Clauses

**33. MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any apartment violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any

notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent

**Bunor Crawford, Qashavanda Lightner**

© 2013, National Apartment Association, Inc. - 31/2012, Florida

12282012103913FL11030153



owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All lease obligations must be performed in the county where the apartment is located.

**RADON GAS:** We are required by Florida Statute 404.056(8) to give the following notification to you. "Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon gas and radon testing may be obtained from your county health department."

**WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**CONDOMINIUM OR HOME OWNERS ASSOCIATION RULES:** To the extent applicable, you acknowledge that you have reviewed, understand and will abide by any Condominium or Home Owner Association Rules and Regulations ("HOA Rules") that may be in effect and promulgated from time to time. Your failure to abide by any HOA Rules is a material breach of this Lease Contract. A copy of the HOA rules is on file at the office.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

You affirmatively state that you are not a criminal sex offender.

Obligation to Vacate. Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration of the Lease term without further notice or demand from Owner.

Although the property may currently be providing cable on a bulk basis to the residents, the property may, with 30 days notice to the resident, cease providing cable and the resident will contract directly with the cable provider for such services.

**FORCE MAJEURE** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

34. **PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments. We do not have to accept and may reject, at any time and at our discretion, any third party checks or any attempted partial payment of rent or other payments.

35. **ASSOCIATION MEMBERSHIP.** We represent that either (1) we or (2) the management company that represents us is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

---

## Security Guidelines for Residents

36. **SECURITY GUIDELINES.** In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT**
1. Lock your doors and windows–even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone–regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name, address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you don't trust has a key, ask the management to rekey the locks. You have a statutory right to have that done, as long as you pay for the rekeying. You may not lockout anyone who has a lawful right to occupy the apartment.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency incident services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your doorlocks, window latches, and other security devices regularly to be sure they are working properly.
10. If your doors or windows are unsecure due to breakins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management–in writing, dated and signed– any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management–in writing, dated and signed–any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY—WHILE USING YOUR CAR**
26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car–whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the backseat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night–or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**
No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

---

## When Moving Out

37. **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of this Lease Contract or renewal term. You will still be liable for the entire lease term if you move out early (paragraph 22) except under the military clause (paragraph 23). **YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:**

• We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

• Your move-out notice must not terminate the Lease Contract sooner than the end of the lease term or renewal period.

**YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE.** Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice–unless you are in default.

38. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the 12282012210391147211030215 3

Eunor Crawford / Qashawanda Lightner

©2012, National Apartment Association, Inc.–11/2012, Florida



lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. You're prohibited from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the fifteen (15) day period for deposit refund begins. You must give us and the U.S. Postal Service in writing each resident's forwarding address.

**39.** **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**40.** **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**41.** **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable service or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 13; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related

charges under paragraphs 6 and 27; government fees or fines against us for violation by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for any charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date.

**42.** **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We will mail you your security deposit refund within fifteen (15) days after surrender or abandonment if we do not intend to impose a claim on the security deposit. If we do intend to impose a claim on the security deposit we shall give you thirty (30) days written notice by certified mail to your last known mailing address stating the reason for imposing the claim.

You have surrendered the apartment when all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

An apartment is also considered "abandoned" if you are absent from the apartment or premises for at least fifteen (15) days, unless the rent is current or you have notified us in writing of your intended absence.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

## Signatures, Originals and Attachments

**43.** **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☒ Animal Addendum
- ☒ Inventory and Condition Form
- ☐ Mold Addendum
- ☐ Enclosed Garage Addendum, dated _____
- ☐ Community Policies Addendum, dated _____
- ☐ Lease Contract Guaranty (_____ guaranties, if more than one)
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: ____)
- ☐ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☒ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☐ Remote Control, Card or Code Access Gate Addendum, dated _____
- ☐ Intrusion Alarm Addendum, dated _____
- ☐ Other _____
- ☐ Other _____

You are legally bound by this document.
Read it carefully before signing.

Resident or Residents (all sign below)

_Quiana Crawford_    28 DEC 2012

Owner or Owner's Representative (signing on behalf of owner)

Address and phone number of owner's representative for notice purposes

5501 University Club Blvd N.
Jacksonville, Florida 32277
(904) 745-5950

Name and address of locator service (if applicable)

Date form is filled out (same as on top of page 1)   12/28/2012

**SPECIAL PROVISIONS (CONTINUED FROM PAGE 2)**

BCC

State of TN
County of Knox
Sworn to & subscribed before
me this 28 day of December, 2012

_Lindsay L Phillips_
Notary

My Commission Expires 10-4-2014

STATE OF TENNESSEE NOTARY PUBLIC KNOX COUNTY

Club at Charter Pointe                    1228201210391541103015.3
Manoe Crawford, Qashawanda Lightner

**For More Information**

**The National Lead Information Center**
Call 1-800-424-LEAD (424-5323) to learn how to protect children from lead poisoning and for other information on lead hazards. To access lead information via the web, visit
www.epa.gov/lead and
www.hud.gov/offices/lead/.

**EPA's Safe Drinking Water Hotline**
Call 1-800-426-4791 for information about lead in drinking water.

**Consumer Product Safety Commission (CPSC) Hotline**
To request information on lead in consumer products, or to report an unsafe consumer product or a product-related injury call 1-800-638-2772, or visit CPSC's Web site at www.cpsc.gov.

**State Health and Environmental Agencies**
Some cities, states, and tribes have their own rules for lead-based paint activities. Check with your local agency to see which laws apply to you. Most agencies can also provide information on finding a lead abatement firm in your area, and on possible sources of financial aid for reducing lead hazards. Receive up-to-date address and phone information for your local contacts on the Internet at www.epa.gov/lead or contact the National Lead Information Center at 1-800-424-LEAD.

For the hearing impaired, call the Federal Information Relay Service at 1-800-877-8339 to access any of the phone numbers in this brochure.

11



**Simple Steps To Protect Your Family From Lead Hazards**

**If you think your home has high levels of lead:**
- Get your young children tested for lead, even if they seem healthy.
- Wash children's hands, bottles, pacifiers, and toys often.
- Make sure children eat healthy, low-fat foods.
- Get your home checked for lead hazards.
- Regularly clean floors, window sills, and other surfaces.
- Wipe soil off shoes before entering house.
- Talk to your landlord about fixing surfaces with peeling or chipping paint.
- Take precautions to avoid exposure to lead dust when remodeling or renovating (call 1-800-424-LEAD for guidelines).
- Don't use a belt-sander, propane torch, high temperature heat gun, scraper, or sandpaper on painted surfaces that may contain lead.
- Don't try to remove lead-based paint yourself.

12

Florida Department of Health–850/245-444      CPSC Main Office (includes Florida)–800/638-2772
EPA Region 4 Office (includes Florida)–404/562-8998      HUD Lead Office–202/755-1785

## FEDERALLY REQUIRED LESSOR DISCLOSURE, AGENT STATEMENT AND LESSEE ACKNOWLEDGMENT OF INFORMATION ON LEAD-BASED PAINT HAZARDS

**LEAD WARNING STATEMENT**  Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors (owners) must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees (residents) must also receive a federally approved pamphlet on lead poisoning prevention.

**LEAD-FREE HOUSING**  If the housing unit has been certified as "lead free" according to 24 C.F.R. Section 35.82 or is not target housing according to 24 C.F.R. Section 35.86, the lead-based paint hazard disclosure requirements do not apply, and therefore, it is not necessary to provide this addendum or a lead-based paint warning pamphlet and lead-based paint disclosure statement to the lessee (resident).

**LESSOR'S DISCLOSURE**
Presence of lead-based paint and/or lead-based paint hazards (check only one box).
- ☒ Lessor (owner) has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
- ☐ Known that lead-based paint and/or lead-based paint hazards are present in the housing (explain).

Records and reports available to lessor (check only one box).
- ☒ Lessor (owner) has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.
- ☐ Lessor (owner) has reports or records indicating the presence of some lead-based paint and/or lead-based paint hazards in the housing, and has provided the lessee (residents) with all such records and reports that are available to lessor (list documents).

**AGENT'S ACKNOWLEDGMENT** (initial)
If another person or entity is involved in leasing the dwelling as an agent of the lessor (i.e., as a management company, real estate agent or locator service acting for the lessor), such agent represents that agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852(d) and agent is aware of agent's responsibility to ensure that lessor complies with such disclosure laws.

**LESSEE'S ACKNOWLEDGMENT** (initial)
Lessee acknowledges the receipt of a copy of a federally approved pamphlet on lead poisoning prevention and all records or reports listed above.

**ACCURACY CERTIFICATIONS**
The parties named below certify that to the best of their knowledge the above information and statements made or provided by them, respectively, are true and accurate. The person who signs for the LESSOR may be the owner himself or herself, an employee, officer or partner of the owner, or a representative of the owner's management company, real estate agent or locator service if such person is authorized to sign for the lessor. The person who signs for the AGENT may be the agent himself or herself, or an employee, officer or partner of the agent if such person is authorized to sign for the agent.

CH-B Club at Charter Pointe, L.L.C.,   5501 University Club Blvd. N                Jacksonville
Apartment name and unit number OR street address of dwelling                         City
#282

_____   _____   3803212
Lessee (Resident)          Date

_____   _____          _____   _____
Lessee (Resident)          Date                Lessee (Resident)          Date

CH-B Club at Charter Pointe, L.L.C.,           Club at Charter Pointe
Printed name of LESSOR (owner) of the dwelling  Printed name of any AGENT of lessor, i.e., management company, real
                                                estate agent or locator service involved in leasing the dwelling

_____   _____          _____   _____
Signature of person signing on behalf of above LESSOR   Date   Signature of person signing on behalf of above AGENT, if any   Date

Florida/National Apartment Association Official Form F-10 (Sheets 1 and 2), October 2010
© 2010, National Apartment Association, Inc.
Bunce Crawford, Qeshawanda Lightner
12282012103904FL11030153                                    Page 4 of 4

B. Temporary Vacating: If Resident is forced to temporarily vacate the premises and find other temporary accommodations, under Florida law FS 83.51(2)(a)1., Management's only legal responsibility is to abate the rent for the time period Resident cannot reside in the dwelling. Management may choose at its sole option to pay other expenses Resident may incur but has no legal obligation to do so under Florida law. If Resident is requested to temporarily vacate, they shall do so within 7 days of written notice to Resident or this shall be considered a material breach of the Lease Contract and this Addendum. Once Resident has been advised that the dwelling is habitable, Management shall have no further responsibility to abate rent, and Resident shall owe rent and all sums due per the Lease Contract and any addenda.

10. RESIDENT CAUSED CONDITIONS: If Resident or Resident's family members, occupants, social guests, or invitees are responsible for causing or introducing bed bugs into the dwelling, Resident shall be in default of the lease, subject to eviction, and shall be liable for all rent, damages, cleaning and pest control fees, and other charges related to dealing with the bed bug issue, and Resident shall pay all reasonable costs of cleaning and pest control treatment. Management incurs to remedy the bed bug infestation situation. If Management must move other residents out of their dwellings in order to treat adjoining or neighboring dwellings, then Resident shall be liable for payment of any lost rental income and other expenses incurred by Management to relocate the other residents and perform pest control treatment to eradicate an infestation in other dwellings.

11. NON-RESIDENT CAUSED BED BUG INFESTATIONS: If in the sole opinion of Management and Pest Control the Resident or Resident's family members, occupants, social guests, or invitees are not responsible for causing or introducing bed bugs into the dwelling, AT MANAGEMENTS OPTION the Lease Contract may be terminated and Resident may still be required to

vacate the dwelling and return possession of the premises to Management if it is determined by Pest Control that it is not feasible to eradicate the infestation with the Resident continuing to reside on the premises. Management shall not be responsible for Resident's consequential losses if the Lease Contract is so terminated.

12. DAMAGES: Under no circumstances shall Management or Resident be liable to each other for punitive damages for breach of contract related to bed bugs.

13. LEASE TERMINATION: In the event bed bugs are determined to be in the dwelling, Management shall have the right to terminate the tenancy by giving Resident seven days' written notice requiring Resident to permanently vacate the dwelling and remove all furniture, clothing, and personal belongings. Management in its sole judgment shall have the right to terminate the tenancy and obtain possession of the dwelling regardless of who is responsible for causing the infestation or presence of bed bugs. Due to the difficulty of treating and the often repetitive treatments necessary to control the infestation, Resident must vacate the dwelling upon such termination. A Resident who fails to vacate after the lease has been terminated shall be subject to an eviction action.

14. INVALID OR UNENFORCEABLE PROVISIONS: If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed and survive and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent and effect of the parties.

You are legally bound by this document. Please read it carefully.

Resident or Residents
(All residents must sign)

Owner or Owner's Representative
(Signs below)

Binia Crawford   28 DEC 2012

Date of Signing Addendum

Florida/National Apartment Association Official Form 12-JJ, September 2012
Copyright 2012, National Apartment Association, Inc. 

8047455953                    # 11/ 21



## LEASE CONTRACT ADDENDUM
## CHOICE OF DAMAGES, EARLY TERMINATION OF LEASE CONTRACT



NATIONAL
APARTMENT
ASSOCIATION

**DWELLING UNIT DESCRIPTION.**
Unit No. _282_ , _5501 University Club Blvd. N_ (street address) in _Jacksonville_ (city), Florida, _32277_ (zip code).

**LEASE CONTRACT DESCRIPTION.**
Lease Contract date: _December 28, 2012_    Owner's name: _CH-B Club at Charter Pointe, L.L._
_C._                                                   Residents (list all residents):
_Bunor Crawford, Qashavanda Lightner_

Upon the early termination of the Lease Contract you may choose to pay a liquidated damage or early termination fee instead of other statutory damages to which we may be entitled. You may pay a fixed amount OR allow us to charge what is allowed by statute. This choice must be made at the time the Lease Contract is signed. If no choice is made, and you terminate the Lease Contract early, then we will charge what is allowed by statute. These charges apply in the event you are in breach of the lease.

*Mark only one Choice.*

| | | |
|---|---|---|
| **Choice 1** ☐ ___Initial | You agree to pay $ _1248.00_ (an amount that does not exceed 2 month's rent) to us as liquidated damages or an early termination fee, if you elect to terminate the lease contract early, as we waive the right to seek additional rent beyond the month in which we retake possession. | |
| | You will still owe rent (as well as any other charges due under the terms of the lease or Florida law) until the end of the month in which you vacate. You will also owe any prior unpaid rent, fees or other damages. After the month in which you vacate the premises, you will not owe any future rent. | |
| **Choice 2** ☐ ___Initial | You do not agree to Liquidated Damages or an Early Termination Fee and you acknowledge that we may seek damages as provided by law. | |
| | You may owe future rents as they become due under the lease. | |

Resident or Residents                          Owner or Owner's Representative
[All residents must sign here]                         [signs here]

_Bunor Crawford_  _28 Dec 2012_
Resident                    Date

                                                Date of Lease Contract
_____  _____              _December 28, 2012_
Resident                    Date

_____  _____
Resident                    Date

_____  _____
Resident                    Date

12282012103916FA11030153

Florida/National Apartment Association Official Form, September 2012
Copyright 2012, National Apartment Association, Inc.



Bunor Crawford, Qashavanda Lightner

**Bedroom** *(describe which one):*
Walls _____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

**Bath** *(describe which one):*
Walls _____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Exhaust Fan/Heater _____
Floor/Carpet _____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Sink, Faucet, Handles, Stopper _____
Countertops _____
Mirror _____
Cabinets, Drawers, Handles _____
Toilet, Paper Holder _____
Bathtub, Enclosure, Stopper _____
Shower, Doors, Rods _____
Tile _____
Other _____

**Half Bath**
Walls _____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Exhaust Fan/Heater _____
Floor/Carpet _____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Sink, Faucet, Handles, Stopper _____
Countertops _____
Mirror _____
Cabinets, Drawers, Handles _____
Toilet, Paper Holder _____
Tile _____
Other _____

**Bedroom** *(describe which one):*
Walls _____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Floor/Carpet _____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Closets, Rods, Shelves _____
Closet Lights, Fixtures _____
Other _____

**Bath** *(describe which one):*
Walls _____

Wallpaper _____
Plugs, Switches, A/C Vents _____
Woodwork/Baseboards _____
Ceiling _____
Light Fixtures, Bulbs _____
Exhaust Fan/Heater _____
Floor/Carpet _____

Doors, Stops, Locks _____
Windows, Latches, Screens _____
Window Coverings _____
Sink, Faucet, Handles, Stopper _____
Countertops _____
Mirror _____
Cabinets, Drawers, Handles _____
Toilet, Paper Holder _____
Bathtub, Enclosure, Stopper _____
Shower, Doors, Rods _____
Tile _____
Other _____

Safety-Related Items (Put "N/A" if not applicable)
Door Knob Locks _____
Keyed Deadbolt Locks _____

Keyless Deadbolts _____

Sliding Door Pin Locks _____
Sliding Door Latches _____
Sliding Door Security Bars _____
Doorviewers _____
Window Latches _____
Porch and Patio Lights _____
Smoke Detectors _____
Alarm System _____
Fire Extinguisher (look at charge level BUT DON'T TEST) _____
Garage Door Opener _____
Gate Access Card(s) _____
Other _____

Date of Move-In: _____
or
Date of Move-Out: _____

**Acknowledgement.** You acknowledge that you have inspected and tested all of the safety-related items (if in the dwelling) and that they are working, except as noted above. All items will be assumed to be in good condition unless otherwise noted on this form. You acknowledge receiving written operating instructions on the alarm system and gate access entry systems (if there are any). You acknowledge testing the smoke detector(s) and verifying that they are working. You acknowledge that you and management have inspected the dwelling unit and that no signs of bedbugs or other pests are present. This unit is in a decent, safe and sanitary condition.

*In signing below, you accept this inventory as part of the Lease Contract and agree that it accurately reflects the condition of the premises for purposes of determining any refund due to you when you move out.*

Resident or Resident's Agent: ~~Brian Crawford~~          Date of Signing: 28 DEC 12

Owner or Owner's Representative: _____          Date of Signing: _____

Brian Crawford, Rachawanda Kightmer

122B2012103918FL11030153          PAGE 2 OF 2.          Florida/National Apartment Association Official Form D-12, September 2012
© 2012, National Apartment Association, Inc.

- You must not let an animal other than support animals into swimming-pool areas, laundry rooms, offices, clubrooms, other recreational facilities, or other dwelling units.

- Your animal must be fed and watered inside the dwelling unit. Don't leave animal food or water outside the dwelling unit at any time, except in fenced yards (if any) for your exclusive use.

- You must keep the animal on a leash and under your supervision when outside the dwelling or any private fenced area. We or our representative may pick up unleashed animals and/or report them to the proper authorities. We may impose reasonable charges for picking up and/or keeping unleashed animals.

- Unless we have designated a particular area in your dwelling unit or on the grounds for animal defecation and urination, you are prohibited from letting an animal defecate or urinate *anywhere* on our property. You must take the animal off our property for that purpose. If we allow animal defecation inside the dwelling unit in this Addendum, you must ensure that it's done in a litter box with a kitty litter-type mix. If the animal defecates anywhere on our property (including in a fenced yard for your exclusive use), you'll be responsible for immediately removing the waste and repairing any damage. Despite anything this Addendum says, you must comply with all local ordinances regarding animal defecation.

- You will have the animal vaccinated and/or receive any shots or medical care as required by law. You will also obtain any licenses and/or permits for the animal as required by law. We may request proof of necessary vaccinations, licenses or permits at any time. Your failure to provide us such information is a material breach of this Lease Contract.

**12. ADDITIONAL RULES.** We have the right to make reasonable changes to the animal rules from time to time if we distribute a written copy of any changes to every resident who is allowed to have animals.

**13. VIOLATION OF RULES.** If you, your guest, or any occupant violates any rule or provision of this Animal Addendum (based upon our judgment) and we give you written notice, you must remove the animal immediately and permanently from the premises. We also have all other rights and remedies set forth in the Lease Contract, including damages, eviction, and attorney's fees to the extent allowed by law.

**14. COMPLAINTS ABOUT ANIMAL.** You must immediately and permanently remove the animal from the premises if we receive a reasonable complaint from a neighbor or other resident or if we, in our sole discretion, determine that the animal has disturbed neighbors or other residents.

**15. OUR REMOVAL OF ANIMAL.** In some circumstances, we may enter the dwelling unit and remove the animal with one day's notice left in a conspicuous place. We can do this if, in our sole judgment, you have:

- abandoned the animal;
- left the animal in the dwelling unit for an extended period of time without food or water;
- failed to care for a sick animal;
- violated our animal rules; or
- let the animal defecate or urinate where it's not supposed to.

In doing this, we must follow the procedures of the Lease Contract, and we may board the animal or turn the animal over to a humane society or local authority. We'll return the animal to you upon request if we haven't already turned it over to a humane society or local authority. We don't have a lien on the animal for any purpose, but you must pay for reasonable care and kenneling charges for the animal. If you don't pick up the animal within 5 days after we remove it, it will be considered abandoned.

**16. LIABILITY FOR DAMAGES, INJURIES, CLEANING, ETC.** You and all co-residents will be jointly and severally liable for the entire amount of all damages caused by the animal, including all cleaning, defleaing, and deodorizing. This provision applies to all parts of the dwelling unit, including carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, as well as landscaping and other outside improvements. If items cannot be satisfactorily cleaned or repaired, you must pay for us to replace them completely. Payment for damages, repairs, cleaning, replacements, etc. are due immediately upon demand.

As owner of the animal, you're strictly liable for the entire amount of any injury that the animal causes to a person or anyone's property. You'll indemnify us for all costs of litigation and attorney's fees resulting from any such damage.

**17. MOVE-OUT.** When you move out, you'll pay for defleaing, deodorizing, and shampooing to protect future residents from possible health hazards, regardless of how long the animal was there. We—not you—will arrange for these services.

**18. MULTIPLE RESIDENTS.** Each resident who signed the Lease Contract must sign this Animal Addendum. You, your guests, and any occupants must follow all animal rules. Each resident is jointly and severally liable for damages and all other obligations set forth in this Animal Addendum, even if the resident does not own the animal.

**19. GENERAL.** You acknowledge that no other oral or written agreement exists regarding animals. Except for written rule changes under paragraph 9 above, our representative has no authority to modify this Animal Addendum or the animal rules except in writing. This Animal Addendum and the animal rules are considered part of the Lease Contract described above. It has been executed in multiple originals, one for you and one or more for us.

This is a binding legal document. Read it carefully before signing.

Resident or Residents
(All residents must sign)

Owner or Owner's Representative
(Signs below)

Brian Crawford        28 DEC 2012

Dunor Crawford, Qashavanda Lightner

12282012103920FL11030153

© 2012, National Apartment Association, Inc.        Florida/National Apartment Association Official Form C-12, September 2012        Page 2 of 2



we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there is a billing fee for the production of any services bill or a set-up charge or initiation fee by us or our billing company, you shall pay such billing fee in an amount not to exceed $_____ per billing period and such set-up charge/initiation fee in an amount not to exceed $_____.

4. You will be charged for the full period of time that you are living in, occupying, or responsible for payment of rent and utility or service charges on the dwelling. If you breach the Lease, you will be responsible for utility and service charges for the time period you were obligated to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utilities and services, we may charge you for any utilities and services billed to us with respect to your dwelling and may charge a reasonable administration fee for billing you for such utilities and services in an amount not to exceed $_____.

5. When you move out, you will receive a final bill, which may be estimated by us based on your prior utility and service usage. This bill must be paid at the time you move out or it will be deducted from the security deposit, as permitted by state law. Unless prohibited by law, bills may also be estimated on a temporary basis when necessary due to equipment malfunctions or other problems.

6. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utilities or any other services provided to the dwelling unless such loss or damage was the direct result of an intentional or negligent act or omission by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations.

7. You agree not to tamper with, adjust, or disconnect any utility or services sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease and this Addendum.

8. Owner has the sole authority to select and approve all utility and services providers who may provide services to Resident(s) at the dwelling community, to the extent not prohibited by law.

9. Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

10. This Addendum shall be enforced to the fullest extent lawful. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. Any determination by a court of competent jurisdiction that a provision of this Addendum is legally invalid or unenforceable shall not diminish the validity or enforceability of the remaining provisions.

11. Special Provisions. The terms of this section supersede any other conflicting terms of this Addendum.

Rent $ 624.00 utilities $ 50.00 total per month $ 674.00

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I have read, understand and agree to comply with the preceding provisions: [All residents must sign here]

Resident Signature _Burg Crawford_____   Date _28 DEC 2012_

Resident Signature _____   Date _____

Resident Signature _____   Date _____

Resident Signature _____   Date _____

Owner Representative _____   Date _____

Bunor Crawford, Qashawanda Lightner

© 2012, National Apartment Association, Inc. - 9/2012, Florida



**Mold Information and Prevention Addendum**



*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your dwelling. That is why this addendum contains important information for you, and responsibilities for both you and us.*

1. **DWELLING UNIT DESCRIPTION. Unit. No.** _282_ (street address)
   5501 University Club Blvd. N _(street address)_
   In Jacksonville, _(city)_
   Florida, 32277 _(zip code)._

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract date: December 28, 2012
   Owner's name: CH-B Club at Charter Pointe,
   L.L.C.

   Residents (list all residents): Bumor Crawford,
   Qashawanda Lightner

3. **ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

   Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for person with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

4. **PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your dwelling, you must do the following:

   * Keep your dwelling clean—particularly the kitchen the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.

   * Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen before you start showering or cooking with open pots. When showering, be sure to keep the shower curtain inside the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

   * Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.

   * Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

   * Keep the thermostat set to automatically circulate air in the event temperatures rise to above 80 degrees Fahrenheit.

5. **IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

   * rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

   * overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

   * leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

   * washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

   * leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and

   * insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

6. **IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON NON-POROUS SURFACES** (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold.) Tilex® and Clorox® contain bleach which can discolor or stain. Be sure to follow the instructions on the container. Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

   Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be used to help remove non-visible mold products from porous items, such as fibers in sofas, chairs, drapes and carpets—provided the fabric are completely dry. Machine washing or dry cleaning will remove mold from clothes.

7. **DO NOT CLEAN OR APPLY BIOCIDES TO** (1) visible mold on porous surfaces, such as sheetrock walls or ceilings or (2) large areas of visible mold on nonporous surfaces. Instead, notify us in writing, and we will take appropriate action.

8. **COMPLIANCE.** Complying with this addendum will help prevent mold growth in your dwelling, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

   If you fail to comply with this Addendum, you can be held responsible for property damage to the dwelling and any health problems that may result. We can't fix problems in your dwelling unless we know about them.

9. **TERMINATION OF TENANCY.** Owner, Management or agent reserves the right to terminate the tenancy and RESIDENT(S) agree to vacate the premises in the event Owner, Management or agent in its sole judgment feels that either there is mold/mildew present in the dwelling unit which may pose a safety or health hazard to RESIDENT(S) or other persons and/or RESIDENT(S) actions or inactions are causing a condition which is conducive to mold/mildew growth.

10. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Resident or Residents
(All residents must sign here.)

Brian Crawford        28 Dec 2012

Owner or Owner's Representative
(Signature)

Date of Lease Contract
December 20, 2012

12282012103921FL11030153
Bumor Crawford, Qashawanda Lightner

Florida/National Apartment Association Official Form 5-12, September 2012
©2012, National Apartment Association, Inc.



Asbestos Addendum


NATIONAL
APARTMENT
ASSOCIATION

Date: December 28, 2012
(when this Addendum is filled out)

**1. DWELLING UNIT DESCRIPTION.** Unit No. 282; 5501 University Club Blvd, N (street address) in Jacksonville (city), Florida; 32277 (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: December 28, 2012
Owner's name: CH-R Club at Charter Pointe, L.L.C.

Residents (list all residents): Bunor Crawford, Qashawanda Lightner

**3. ASBESTOS.** In most dwellings which were built prior to 1981 and in some built after that, asbestos was commonly used as a construction material. In various parts of your dwelling, asbestos materials may have been used in the original construction or in renovations prior to the enactment of federal laws which limit asbestos in certain construction materials.

**34. FEDERAL RECOMMENDATIONS.** The United States Environmental Protection Agency (EPA) has determined that the mere presence of asbestos materials does not pose a health risk to residents and that such materials are safe so long as they are not dislodged or disturbed in a manner that causes the asbestos fibers to be released. Disturbances include sanding, scraping, pounding, or other techniques that produce dust and cause the asbestos particles to become airborne. The EPA does not require that intact asbestos materials be removed. Instead, the law simply requires that we take reasonable precautions to minimize the chance of damage or disturbance of those materials.

**5. COMMUNITY POLICIES AND RULES.** You, your families, other occupants, and guests must not disturb or attach anything to the walls, ceilings, floor tiles, or insulation behind the walls or ceilings in your dwelling unless specifically allowed in owner's rules or community policies that are separately attached to this Lease Contract. The foregoing prevails over other provisions of the Lease Contract to the contrary. Please report any ceiling leaks to management promptly so that pieces of acoustical ceiling material or ceiling tiles do not fall to the floor and get disturbed by people walking on the fallen material.

**6. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Resident(s)
(All residents must sign)

_Bunor Crawford_

_____

_____

Owner or Owner's Representative

Date of Signing Addendum

29 DEC 2012

_____

Date of Signing Addendum

Bunor Crawford, Qashawanda Lightner

1228201210392370111030153

Florida/National Apartment Association Official Form 12-Y, September 2012
Copyright 2012, National Apartment Association, Inc. 



## LEASE CONTRACT ADDENDUM
### FOR SATELLITE DISH OR ANTENNA



NATIONAL APARTMENT ASSOCIATION

Under a Federal Communications Commission (FCC) order, you as our resident have a right to install a transmitting or receiving satellite dish or antenna on the leased dwelling, subject to FCC limitations. We as a rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

**1. Dwelling Unit Description.** Unit No. **282**
5501 University Club Blvd. N (street address)
in Jacksonville, (city),
Florida, 32277 (Zip code).

**2. Lease Contract Description.**
Lease Contract date: December 28, 2012
Owner's name: CH-B Club at Charter Pointe,
L.L.C.

Residents (list all residents): Bunor Crawford,
Qashawanda Lightnor

**3. Number and size.** You may install _1_ satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

**4. Location.** Your satellite dish or antenna must be located: (1) inside your dwelling; or (2) in an area outside your dwelling such as a balcony, patio, yard, etc., of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fences or common area, or in an area that other residents are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use.

**5. Safety and non-interference.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring property; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of these methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

**6. Signal transmission from exterior dish or antenna to interior of dwelling.** You may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your dwelling (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your dwelling only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables through a window pass," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window—without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by us in writing.

**7. Safety in installation.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be qualified.

**8. Maintenance.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

**9. Removal and damages.** You must remove the satellite dish or antenna and all related equipment when you move out of the dwelling. In accordance with the NAA Lease Contract, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

**10. Liability insurance.** You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance (if available) to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment. The insurance coverage must be $ _200000.00_, which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc.

**11. Security Deposit.** An additional security deposit of $ _200.00_ will be charged. We [check one] ☑ will consider or ☐ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in the Lease Contract [check one] ☑ does or ☐ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

This additional security deposit is required to help protect us against possible repair costs, damages, or failure at time of move-out. Factors affecting any security deposit may vary, depending on: (1) how the dish or antenna is attached (nails, screws, leg bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost repair or restoration after removal, etc.

**12. When you may begin installation.** You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 10 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 11; and (4) received our written approval of the installation materials and the person or company that will do the installation, which approval may not be unreasonably withheld.

**13. Miscellaneous.** If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

**14. Special Provisions.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Resident or Residents
[All residents must sign here]

Owner or Owner's Representative
[signs here]

Bunor Crawford         28 DE 2012
_____

Date of Lease Contract
December 28, 2012

Bunor Crawford, Qashawanda Lightnor

© 2012, National Apartment Association, Inc. – 9/2012, Florida

- Notwithstanding this, any vehicle illegally parked in a fire lane, designated no parking space or handicapped space, or blocking an entrance, exit, driveway, dumpster, or parked illegally in a designated parking space, will immediately be towed, without notice, at the vehicle owner's expense.
- The washing of vehicles is not permitted on the property unless specifically allowed in designated area.
- Any on property repairs and/or maintenance of any vehicle must be with the prior written permission of the Management.
- Recreational vehicles, boats or trailers may only be parked on the property with Management's permission (in Management's sole discretion), and must be registered with the Management Office and parked in the area(s) designated by Management.

**VII. FIRE HAZARDS.** In order to minimize fire hazards and comply with city ordinances, Resident shall comply with the following:

- Residents and guests will adhere to the Community rules and regulations other Management policies concerning fire hazards, which may be revised from time to time.
- No person shall knowingly maintain a fire hazard.
- Grills, Barbeques, and any other outdoor cooking or open flame devices will be used only on the ground level and will be placed a minimum of __15__ feet from any building. Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or roofs, indoors, on balconies or patios, or in other locations which may cause fires.
- Fireplaces: Only firewood is permitted in the fireplace. No artificial substances, such as Duraflame® logs are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.
- Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in dwellings, near exits, stairways breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any apparatus or engine using flammable or combustible liquid as fuel.
- No person shall block or obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.
- Resident(s) are solely responsible for fines or penalties caused by their actions in violation of local fire protection codes.

**VIII. EXTERMINATING.** Unless prohibited by statue or otherwise stated in the Lease, Owner may conduct extermination operations in Residents' dwelling several times a year and as needed to prevent insect infestation. Owner will notify Residents in advance of extermination in Residents' Dwelling, and give Resident instructions for the preparation of the Dwelling and safe contact with Insecticides. Residents will be responsible to prepare the Dwelling for extermination in accordance with Owner's instructions. If Residents are unprepared for a scheduled treatment date Owner will prepare Residents' dwelling and charge Residents accordingly. Residents must request extermination treatments in addition to those regularly provided by Owner in writing. Residents agree to perform the tasks required by Owner on the day of interior extermination to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following:

- Clean in all cabinets, drawers and closets in kitchen and pantry.
- If roaches have been seen in closets, remove contents from shelves and floor.
- Remove infants and young children from the dwelling.
- Remove pets or place them in bedrooms, and notify Owner of such placement.
- Remove chain locks or other types of obstruction on day of service.
- Cover fish tanks and turn off their air pumps.
- Do not wipe out cabinets after treatment.

In the case of suspected or confirmed bed bug infestation, resident will agree to the following:

- Resident will wash all clothing, bed sheets, draperies, towels, etc. in extremely hot water.
- Resident will thoroughly clean, off premises, all luggage, handbags, shoes and clothes hanging containers.
- Resident will cooperate with Owner's cleaning efforts for all mattresses and seat cushions or other upholstered furniture, and will dispose of same if requested.

**RESIDENTS ARE SOLELY RESPONSIBLE TO NOTIFY OWNER IN WRITING PRIOR TO EXTERMINATION OF ANY ANTICIPATED HEALTH OR SAFETY CONCERNS RELATED TO EXTERMINATION AND THE USE OF INSECTICIDES**

**IX. DRAPES AND SHADES.** Drapes or shades installed by Resident, when allowed, must be lined in white and present a uniform exterior appearance.

**X. WATERBEDS.** Resident shall not have water beds or other water furniture in the dwelling without prior written permission of Owner.

**XI. BALCONY or PATIO.** Balconies and patios shall be kept neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balconies or patios.

**XII. SIGNS.** Residents shall not display any signs, exterior lights or markings on dwelling. No awnings or other projections shall be attached to the outside of the building of which dwelling is a part.

**XIII. SATELLITE DISHES/ANTENNAS.** You must complete a satellite addendum and abide by its terms prior to installation or use.

**XIV. WAIVER/SEVERABILITY CLAUSE.** No waiver of any provision herein, or in any Community rules and regulations, shall be effective unless granted by the Owner in a signed and dated writing. If any court of competent jurisdiction finds that any clause, phrase, or provision of this Part is invalid for any reason whatsoever, this finding shall not effect the validity of the remaining portions of this addendum, the Lease Contract or any other addenda to the Lease Contract.

**XV. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I have read, understand and agree to comply with the preceding provisions.

| | | | |
|---|---|---|---|
| _Brian Crawford_ | 29 DEC 2012 | | |
| Resident | Date | Resident | Date |
| | | | |
| Resident | Date | Resident | Date |

| | |
|---|---|
| Owner Representative | Date |

Revised 9/2012, Florida

Brian Crawford, Qushawanda Lightner

Page 2 of 2





## LEASE ADDENDUM FOR RENT CONCESSION OR OTHER RENT DISCOUNT

1. **Dwelling Unit Description.** Unit No. __282__
__5501 University Club Blvd. N__ *(street address)*
In __Jacksonville__ *(city),*
Florida, __32277__ *(zip code).*

2. **Lease Contract Description.**
Lease Contract date: __December 28, 2012__
Owner's name: __CH-B Club at Charter Pointe,__
__L.L.C.__

Residents *(list all residents):* __Bunor Crawford,__
__Qashawanda Lightner__

3. **Concession/Discount Agreement.** As consideration for your agreement to remain in your apartment and to fulfill your Lease obligations throughout the full term of your Lease, you will receive the following rent Concession and/or Discount:

*[Check all that apply]*

☐ **One-Time Concession.** You will receive a One-Time Concession off the rent indicated in the Lease Contract in the total amount of $ __824.00__ . This Concession will be credited to your rent due for the month(s) of _____

☐ **Monthly Discount/Concession.** The rent indicated in the Lease Contract includes a Monthly Discount of $_____ per month off of the suggested rental rate for your dwelling.

☐ **Other Discount/Concession.** You will receive the following discount off the rent indicated in the Lease Contract:
_____
_____
_____

4. **Concession Cancellation and Charge-Back.** The concession and discounts indicated above are provided to you as an incentive and with the understanding that you will fulfill your obligations under the Lease Contract through the entire term of your Lease.

If your lease is terminated early due to your default (for example, if you abandon the premises without paying rent or are evicted), this Concession/Discount Agreement will be immediately terminated, and you will be required to immediately repay to the Owner the amounts of all *[Check all that apply]*

☐ Concessions
☐ Discounts

that you have actually received for the months you resided in the Premises, and without further notice from us.

5. **Market Rent.** The market rent for this dwelling is the rent stated in the NAA Lease Contract. You acknowledge that the market rent is a fair representation of what the specific dwelling would actually rent for at the time the Lease Contract was negotiated and executed, and is reflective of the rent for a similar dwelling at comparable properties.

6. **Special Provisions.** The following special provisions control over any conflicting provisions of this printed Addendum form or the Lease Contract:
__$624.00 off the month of Jan-paid only__
__$50.00, $200.00 off for Feb-rent pay only__
__$474.00.__
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*[All residents must sign here]*

Bunor Crawford     28-02-2012

_____

**Owner or Owner's Representative**
*[sign here]*

_____

Date of Lease Contract
__December 28, 2012__

© 2012, National Apartment Association, Inc. - 9/2012, Florida

Bunor Crawford, Qashawanda Lightner

16-2014-CA-000432-XXXX-MA

 

### LEASE ADDENDUM
### LIABILITY INSURANCE REQUIRED OF RESIDENT

1. **Dwelling Unit Description.** Unit No. __282__ , (street address) __5501 University Club Blvd. 'N__ (city), in __Jacksonville__ , Florida, __32277__ (zip code).

2. **Lease Contract Description.**
Lease Contract date: __December 28, 2012__
Owner's name: __CH-B Club at Charter Pointe,__
__L.L.C.__

Residents (list all residents): __Bunor Crawford,__
__Qashawanda Lightner__

3. **Acknowledgment Concerning Insurance or Damage Waiver.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupant or guests. You understand that the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $ __10000.00__ per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance satisfying the requirements listed below, at your sole expense.

4. **Required Policy.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third parties (including damage to our property), in a minimum policy coverage amount of $ __10000.00__ , from a carrier with an AM Best rating of A-VII or better, licensed to do business in Florida. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

5. We may provide you with information of an insurance program that we make available to residents, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.

6. **Subrogation Allowed.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language to the contrary in the Lease Contract.

7. **Your Insurance Coverage.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: __ERentex Plan__

8. **Default.** Any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law.

9. **Miscellaneous.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

10. **Special Provisions:**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

I have read, understand and agree to comply with the preceding provisions.

_Resident or Residents_
_[All residents must sign here]_

Bunor Crawford    28-DEC-2012

_Owner or Owner's Representative_
_[signs here]_

Date of Lease Contract

__December 28, 2012__

© 2012, National Apartment Association, Inc. - 9/2012, Florida

Bunor Crawford, Qashawanda Lightner



### LEASE ADDENDUM
### FOR REMOTE CONTROL, CARD, OR CODE ACCESS GATE



NATIONAL APARTMENT ASSOCIATION

1. Dwelling Unit Description. Unit No. 202
9501 University Club Blvd. N (street address)
in Jacksonville (city),
Florida, 32277 (zip code).

2. Lease Contract Description.
Lease Contract date: December 28, 2012
Owner's name: CH-B Club At Charter Pointe, L.L.C.

Residents (list all residents): Bunor Crawford, Qashawanda Lightner

To the extent any terms of this addendum conflict with the Lease Contract, the terms of this addendum are controlling.

3. Remote controls/cards/code for gate access.
☐ Remote control for gate access. Each person who is 18 years of age or older and listed as a resident on the lease will be given a remote control at no cost to you during his or her residency. Each additional remote control for you or your children or other occupants will require a $_____ non-refundable fee.

☐ Cards for gate access. Each person who is 18 years of age or older and listed as a resident on the lease will be given a card at no cost to one during his or her residency. Each additional card for you or your children or other occupants will require a $_____ non-refundable fee.

☐ Code for gate access. Each resident will be given, at no cost, an access code (keypad number) for the pedestrian or vehicular access gates. It is to be used only during your residency. We may change the access code at any time and will notify you of any such changes.

4. Damaged, lost or unreturned remote controls, cards or code changes.
☐ If a remote control is lost, stolen or damaged, a $_____ fee will be charged for a replacement. If a remote control is not returned or is returned damaged when you move out, there will be a $_____ deduction from the security deposit.

☐ If a card is lost, stolen or damaged, a $25.00 fee will be charged for a replacement card. If a card is not returned or is returned damaged when you move out, there will be $25.00 deduction from the security deposit.

☐ We may change the code(s) at any time and notify you accordingly.

5. Report damage or malfunctions. Please immediately report to the office any malfunction or damage to gates, fencing, locks or related equipment.

6. Follow written instructions. We ask that you and all other occupants read the written instructions that have been furnished to you regarding the access gates. This is important because if the gates are damaged by you or your family, guest or invitee through negligence or misuse, you are liable for the damages under your lease, and collection of damage amount will be pursued.

7. Personal injury and/or personal property damage. Except as specifically required by law, we have no duty to maintain the gates and cannot warranty against gate malfunctions. We make no representations or guarantees to you concerning security of the community. Any measures, devices, or activities taken by us are solely for the benefit of us and for the protection of our property and interests, and any benefit to you of the same is purely incidental. Anything mechanical or electronic is subject to malfunction. Fencing, gates or other devices will not prevent all crime. No security system or device is foolproof or 100 percent successful in deterring crime. Crime can still occur.

Protecting residents, their families, occupants, guests and invitees from crime is the sole responsibility of residents, occupants and law enforcement agencies. You should first call 911 or other appropriate emergency agencies if a crime occurs or is suspected. We are not liable to any resident, family member, guest, occupant or invitee for personal injury, death or damage/loss of personal property from inadequate security or perimeter fencing, automobile access gates and/or pedestrian access gates. We reserve the right to modify or eliminate security systems other than those statutorily required. You will be held responsible for the actions of any persons to whom you provide access to the community.

8. Rules in using vehicle gates:
• Always approach entry and exit gates with caution and at a very slow rate of speed.
• Never stop your car where the gate can hit your vehicle as the gate opens or closes.
• Never follow another vehicle into an open gate. Always use your card to gain entry.
• Report to management the vehicle license plate number of any vehicle that piggybacks through the gate.
• Never force the gate open with your car.
• Never get out of your vehicle while the gates are opening or closing.
• If you are using the gates with a boat or trailer, please contact management for assistance. The length and width of the trailer may cause recognition problems with the safety loop detector and could cause damage.
• Do not operate the gate if there are small children nearby who might get caught in it as it opens or closes.
• If you lose your card, please contact the management office immediately.
• Do not give your card or code to anyone else.
• Do not tamper with gate or allow your occupants to tamper or play with gates.

9. Special Provisions. The following special provisions control over conflicting provisions of this printed lease:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Resident or Residents
[All residents must sign here]

Bunor Crawford 28 DEC 2012

_____

_____

Owner or Owner's Representative
[signs here]

_____

Date of Lease Contract

December 28, 2012

© 2012, National Apartment Association, Inc. – 9/2012, Florida

Bunor Crawford, Qashawanda Lightner

March 8, 2013

**HAND-DELIVERED AND FAXED TO (904) 745-5953**

To: Club at Charter Pointe
Attn: Mary Anne Sharkey or Management
5501 University Club Boulevard North
Jacksonville, FL 32277

## 7-DAY NOTICE OF NONCOMPLIANCE TO LANDLORD

This is to inform you that you are not maintaining my apartment as required by §83.51(1), Florida Statutes, and our lease agreement. If you do not complete the following repairs in the next 7 days, I will terminate the lease, move out, and hold you responsible for any damages resulting from the termination:

1. Excessive moisture in the master bedroom and mold under the carpets, as evidenced by the attached photographs and my estimates from Superior Carpet Care.
2. Mold in the unit's air ducts, as evidenced by the attached photographs, which contributed to the illness and hospitalization of me, my fiancé, my fiancé's son, as well as other family members.

These issues were brought to your attention in February 2013. On February 19, 2013, you hired All Weather Contractors to inspect the unit. According to a letter dated February 20, 2013, All Weather Contractors found no evidence of moisture or water damage in the unit.

I was present during the inspection by All Weather Contractors on February 19, 2013. The inspection by All Weather Contractors consisted of a 3-minute cursory review of the walls, which is obviously insufficient for determining mold or any other problems in the unit. As such, the inspection results are without merit.

Bunor Crawford
5501 University Club Boulevard North, Unit 282
Jacksonville, FL 32277
(904) 401-7778

March 15, 2013

To: Club at Charter Pointe
   Attn: Mary Anne Sharkey or Management
   5501 University Club Boulevard North
   Jacksonville, FL 32277

### NOTICE OF TERMINATION OF RENTAL AGREEMENT

   Due to your failure to remedy within 7 days the material noncompliances set forth
in my notice dated March 8, 2013, delivered on March 8, 2013, I elect to terminate the rental
agreement concerning the premises at 5501 University Club Boulevard North, Unit 282,
Jacksonville, Florida 32277.

   I will be immediately vacating the residence. However, I request the right to be present
during any inspection of my unit for damages.  My future mailing address is 7925 Merrill Road,
Apt. 413, Jacksonville, FL 32277.


Bunor Crawford
5501 University Club Boulevard North, Unit 282
Jacksonville, FL 32277
(904) 401-7778


Qashawanda Lightner
5501 University Club Boulevard North, Unit 282
Jacksonville, FL 32277
(904) 383-6896

# MUNICIPAL CODE COMPLIANCE DIVISION

## Jacksonville
### Where Florida Begins.

Case Recap – Case # 2013-66673 – Case Status: Active          Printed: 04/01/2013 at 14:34.24

Complaint #: 2013-66673                Source: Citizen

CARE Status: Active

Description: Environmental Quality issue: no
Complex name: yes; university club at tyler point
Unit or bldg #: 282
MH Park Name: no
: no
Visible mold throughout house in carpet and air ducts. Customer has been hospitalized as a result. Please have an officer come before coming to ensure smeone will be home.

| ... OCCUPANT/LOCATION... | ... PROPERTY OWNER... | ... ORIGINAL COMPLAINANT ... |
|---|---|---|
| House #: 5501 | 1111 WEST 11TH ST. | |
| Street Name: N UNIVERSITY CLUI BV. | AUSTIN, TX78703 | |
| Unit: | | |

LOT/BLOCK/SUBDIV:

R/E NUMBER: 108932 0110

DISTRICT: 1                ZONING:

BOOK/PAGE/MAP:

LEGAL DESCRIPTION: 33-1S-27E 17.69 PT GOVT LOTS 2,3 RECD O/R 15531-1048

### Violation Summary

| Complied | Location | Remedy | Definition | Inspector | Section |
|---|---|---|---|---|---|
| | Bedroom 1 | Clean | Interior structure contains mold and/or mildew. | Jim Libero | 518.451(a) |
| | Bedroom 2 | Clean | Interior structure contains mold and/or mildew. | Jim Libero | 518.451(a) |
| | A/C or A/C area | Clean | Interior structure contains mold and/or mildew. | Jim Libero | 518.451(a) |

ENVIRONMENTAL AND COMPLIANCE DEPARTMENT
407 N. Laura St, Suite 200  ·  Jacksonville, FL 32202  ·  Phone: 904.255.7000  ·  Fax: 904.588.0510  www.coj.net

# MUNICIPAL CODE COMPLIANCE DIVISION

## *Jacksonville*
### Where Florida Begins.

**Case Recap - Case # 2013-66673 - Case Status: Active**          Printed: 04/01/2013 at 14:34.25

### Completed Inspections

| Date Scheduled | Date Completed | Inspector | Visit Description | Status |
|---|---|---|---|---|
| 03/19/2013 | 03/19/2013 | Jim Libero | Inspection: Appointment with | Complete |

**Inspector's comments from inspection done on 03/19/2013:**
2013-66673; Met with Ms Lightner at her apartment wear she has only lived for a few weeks. There is mold in the mast bed room in the conner on the floor. The second bed room has mold around the window. She hired an independent contractor to come in an check the vents. There is mold in the vents. The A/C unit is dirty. She has moved all of her belongings out and is living in a motel. jlibero

| 03/19/2013 | 03/19/2013 | Jim Libero | Violation Notice: First Notice of | Complete |

### Pending Requests

| Date Scheduled | Date Completed | Inspector | Visit Description | Status |
|---|---|---|---|---|
| 03/13/2013 | 03/19/2013 | Jim Libero | Inspection: Initial | Cancelled |
| 04/22/2013 | | | Inspection: Subsequent, Residential | Scheduled |

### Document History

| Date | Status | Party Name | Certified Mail # | NoticeType |
|---|---|---|---|---|
| | Sent | CH-B CLUB AT CHAPTER POINT LLC, | 70123050000123495462 | Residential – First Notice - M10 |

Case Recap for Case # 2013-66673 – Page 2 of 3
**ENVIRONMENTAL AND COMPLIANCE DEPARTMENT**
407 N. Laura St, Suite 200   Jacksonville, FL 32202  |  Phone: 904.255.7000  |  Fax: 904.588.0510  www.coj.net

# MUNICIPAL CODE COMPLIANCE DIVISION

## Jacksonville
### Where Florida Begins.

**Case Recap – Case # 2013-66673 – Case Status: Active**

### Additional Case Comments

| Date | Type | Comment | Inspector |
|------|------|---------|-----------|
| 03/12/2013 | C | Environmental Quality issue: no<br>Complex name: yes; university club at tyler point<br>Unit or bldg #: 282<br>MH Park Name: no<br>: no<br>Visible mold throughout house in carpet and air ducts. Customer has been hospitalized as a result. Please have an officer come before coming to ensure smeone will be home. | system System |
| 03/15/2013 | N | 2013-66673; Returned call to Mr Crawford @ 904-401-7778. Mak an appointment to meet his fionsay Ms Lightner at the apartment on 19 March 2013 Tuesday Between 11:00 and 11:30. jlibero | Jim Libero |
| 03/19/2013 | N | 2013-66673; Met with Ms Lightner at her apartment wear she has only live for a few weeks. There is mold in the master bed room in the conner on the floor. The second bed room has mold around the window. She hired an independent contractor to come in an check the vents. There is mold in the vents. The A/C unit is dirty. She has moved all of her belongings out and is living in a motel. jlibero | Jim Libero |
| 03/26/2013 | N | 2013-66673 – Returned call to Ms. Lightner 383-6896 left message. DSteel | Dennis Steele |
| 03/27/2013 | N | 2013-66673 – Returned 2nd call to Ms. Lightner 383-6896 left message. DSteele | Dennis Steele |
| 03/29/2013 | N | 2013-66673 – Returned call to Ms. Lightner 383-6896 and explained 30 day notice process. DSteele | Dennis Steele |
| 03/29/2013 | N | 2013-66673 – Returned call to Bernard Crawford 401-7778 left message. DSteele | Dennis Steele |

**ENVIRONMENTAL AND COMPLIANCE DEPARTMENT**
407 N. Laura St; Suite 200   Jacksonville, FL 32202  :  Phone: 904.255.7000  |  Fax: 904.588.0510   www.coj.net