UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:  3:13-CV-00213-j-39JBT

BUNOR CRAWFORD,
QASHAWNDA LIGHTENER(CRAWFORD),
C.W.

PLAINTIFFS,

vs.

CLUB AT CHARTER POINTE APARTMENTS,
SAN MIGUEL MANAGEMENT LIMITED PARTNERSHIP

DEFENDANTS.

_____/

## AMENDED COMPLAINT

COMES NOW Bunor Crawford, Qashawanda Lightner (Crawford), C.W. (herein after "Plaintiffs") by and through their undersigned counsel, and sues Defendants, CH-B CLUB at CHARTER POINTE, LLC (formerly improperly named Club at Charter Pointe Apartments) and San Miguel Management Limited Partnership (herein after "CH-B & SAN MIGUEL respectively") and alleges the following:

## GENERAL ALLEGATIONS

1.      This is an action for damages exceeding the sum of $15,000.00, exclusive of costs, interest and attorney's fees, and is otherwise within this Court's jurisdiction.

2.      Plaintiffs, Bunor Crawford and Qashawanda Lightner (Crawford) are residents of the State of Florida, over 18 years of age and are sui juris.

3.      Plaintiff, C.W. is the minor child of Bunor Crawford and Qashawanda Lightner.

4.      Plaintiffs are residents of Duval County, Florida. Venue is proper in the county where this suit is filed.

5.      Defendant CH-B Club at Charter Pointe, LLC is a Delaware corporation registered and doing business in the state of Florida.

6.      Defendant San Miguel Management Limited Partnership is a Texas corporation

1

registered and doing business in the state of Florida.

7.    The events giving rise to this cause of action occurred in Duval County, Florida.

8.    Plaintiffs have been damaged severely by the actions of Defendant.

9.    On or about December 28, 2012, Plaintiffs entered a lease agreement with CH-B through its San Miguel agent. A copy of the lease is attached as an Exhibit.

10.    Prior to signing the lease and accepting the keys, Plaintiffs verbally-forewarned San Miguel of Plaintiffs' allergies. More specifically, Plaintiff C.W.'s eight pages of allergies.

11.    On or about the first week of January 2013, Plaintiffs alerted the main office and showed property manager Mary Anne Sharkey, a big round light stain coming through the carpet in the front living room. Defendant suggested that Plaintiff be moved to another unit.

12.    On or about the second week of January 2013, Plaintiffs began not feeling well.

13.    Plaintiffs' symptoms persisted for about a month and got progressively worst.

14.    On or about February 17, 2013, Chris Barela, CEO of Superior Carpet Care & Restoration came to Plaintiffs' apartment and conducted his test. He concluded from his work order contract that there was mold in the Plaintiffs' apartment and the mold had been present in the home before Plaintiffs' tenancy began.

15.    On or about February 19, 2013, Plaintiffs went to stay at a hotel after being advised by a physician that it was unhealthy to reside in the apartment.

16.    On or about March 8, 2013, Plaintiffs delivered a 7-day Notice of Noncompliance to Landlord to Defendants via fax. A copy of the 7-day Notice of Noncompliance is attached as an Exhibit.

17.    On or about March 15, 2013, Plaintiffs delivered a Notice of Termination of Rental Agreement to Defendants via fax. A copy of the 7-day Notice of Termination is attached as an Exhibit.

18.    On or about March 19, 2013, an inspection of the residence was conducted by City Inspector and mold and/or mildew was found in the residence. A copy of the Inspector's report is attached an Exhibit.

## COUNT I- BREACH OF CONTRACT BY DEFENDANT
## CH-B CLUB AT CHARTER POINTE, L.L.C.

2

19.     Plaintiffs realleges paragraphs 1 through 18 above and incorporates them herein.

20.     On December 28, 2012, Plaintiffs entered into a lease agreement with CH-B.

21.     The said lease agreement was a contract between Plaintiffs and CH-B for leasing of an apartment unit in an apartment building owned by CH-B.

22.     Plaintiffs performed under the lease agreement by moving into rented apartment unit and tendering the required rent to CH-B through San Miguel.

23.     Clause 24 of the lease agreement states in pertinent part that Defendants "would comply with requirements of applicable building, housing, and health codes.

24.     Clause 31 outlines the responsibilities of the owner and or its agent as it relates to the lease agreement.

25.     Defendants failed to substantially comply with applicable laws regarding safety, sanitation, and fair housing.

26.     Specifically, CH-B breached the contract by violating Sections 518.420(f) & 518.451(a) of the Jacksonville Municipal Code and Florida Statutes Section 83.51(1)(a), which state "No owner or other person shall occupy or let to another person for occupancy a property unless it and the premises are clean, sanitary, fit for occupancy and comply with all applicable requirements of the city and the state"

27.     Defendants moved Plaintiffs into an apartment with a mold infestation.

28.     The mold infestation rendered the apartment per se unclean, unsanitary and unfit for occupancy.

29.     Plaintiff gave Defendants an opportunity to cure the mold infestation and Defendants failed to remedy the situation.

30.     Plaintiff was left with no choice, but to terminate the lease agreement and vacate the unsanitary premises.

31.     Plaintiffs have suffered damages due to Defendants' breach.


**COUNT II- FRAUDULENT CONCEALMENT/FRAUD BY DEFENDANT SAN MIGUEL**

32.     Plaintiff realleges paragraphs 1 through 18 above and incorporates them herein.

33.     San Miguel, as an agent for CH-B, managed the property at issue in this case.

34.     San Miguel and its employees were responsible for preparing the apartment for

Plaintiffs' occupancy.

35.     San Miguel and its employees would have seen the mold infestation when they readied the apartment for occupation.

36.     On or about December 28, 2012, Mary Sharkey, a San Miguel employee, assured Plaintiffs that apartment was clean and ready to be rented.

37.     The City inspector and Chris Barela, both independently during their inspections, stated that the mold issue was present prior to Plaintiff's moving in and that the mold issue was so severe, that there is no way San Miguel didn't know about the mold infestation.

38.     Defendants' concealed the mold issue intentionally to induce Plaintiffs' into leasing the apartment.

39.     San Miguel knew that the apartment had a mold issue and actively concealed the issue from Plaintiffs by painting over mold on the walls and attempting to clean the mold showing through in the carpet.

40.     San Miguel benefited from this fraudulent concealment by gaining a new tenant and therefore increasing the occupancy of the property.

41.     A higher occupancy rate would increase the likelihood that CH-B would continue to retain San Miguel's services as its property management company.

42.     Plaintiffs' justifiably relied on the Defendants' representation that the apartment was clean and ready to be occupied.

43.     Plaintiffs never would have leased the apartment in question, had they know it had a mold infestation.

44.     Plaintiffs suffered mental, physical, and emotional harm as a result of Defendants' actions.

## COUNT III-NEGLIGENCE-SAN MIGUEL

45.     Plaintiffs reallege paragraphs 1 through 18 above and incorporates them here in.

46.     San Miguel owed a duty to Plaintiffs to deliver a clean and sanitary apartment to them.

47.     San Miguel breached its duty to Plaintiffs by

     a.   Failing to adequately inspect the apartment and thereby leasing a mold infested apartment unit to Plaintiffs.

     b.   Failing to sanitize the apartment before renting it Plaintiffs

4

       c.  Failing to remedy the issue on about January 3, 2013, when Plaintiffs notified San Miguel of the appearance of a mold like stain.

48.    The mold infestation was so severe, it started to show through the carpet only days after Plaintiffs moved in. This was verbally confirmed by Chris Barela and the City Inspector.

49.    San Miguel's negligence was the proximate cause of Plaintiffs' injuries, as evidenced by the fact that once Plaintiffs removed themselves from the apartment, their health improved.

50.    Plaintiffs suffered injuries including, but not limited to: physical sickness, pain & suffering, emotional distress, moving hassle, medical expenses, and car expenses.

WHEREFORE Plaintiffs respectfully asks this Court to award:

    A.  $500,000 compensatory and consequential damages

    B.  1,500,000 punitive damages

    C.  Any other such relief this Court deems just.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury on all matters provided for by law.

**s/Jonathan Ross**

Jonathan Ross, Esquire
FL Bar No.: 0094302
The Ross Firm P.A.
4914 North Main St.
Jacksonville, FL 32206
Telephone: (904) 415-7744
Fax: (866) 922-1207
Primary Email: Service@therossfirmpa.com
Secondary: Jonathan.ross@therossfirmpa.com
Attorney for PLAINTIFFS

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2014, I electronically filed the foregoing with the Clerk

of the Court by using the CM/ECF system.

<u>s/Jonathan O. Ross</u>
Jonathan O. Ross

Apartment Lease Contract



NATIONAL APARTMENT ASSOCIATION.

Date of Lease Contract: __December 28, 2012__
(when the Lease Contract is filled out)

This is a binding document. Read carefully before signing.

## Moving In – General Information

1. **PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:
__Bunor Crawford, Qashawanda Lightner__

__CH-B Club at Charter Pointe, L.L.C.__ and *us*, the owner:

*(name of apartment community or title holder)*. You've agreed to rent Apartment No. __282__, at __5501 University Club__ __Blvd. N__ (street address) in __Jacksonville__ (city), Florida, __32277__ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

The ☐ Owner or ☒ Manager of these apartments is __San__ __Miguel Management, LP__

whose address is __5501 University Club Blvd.__ __North Jacksonville, FL 32277__ . Such person or company is authorized to receive notices and demands in the landlord's behalf.

A lease termination notice must be given in writing. Notice to the landlord must be delivered to the management office at the apartment community or any other address designated by management as follows: __5501 University Club Blvd. North__ __Jacksonville, FL 32277__ . Notice to the tenant must be delivered to the Resident's address as shown above.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

__Christian Wallace 6/9/200__

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than __14__ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

3. **LEASE TERM.** The initial term of the Lease Contract begins on the __29th__ day of __December__, __2012__, and ends at midnight the __28th__ day of __December__, __2013__. This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days written notice of termination or intent to move-out as required by paragraph 37. If the number of days isn't filled in, at least 30 days notice is required. In the event this Lease Contract renews month-to-month, you or we may terminate a month-to-month tenancy by giving the other party written notice no later than ____ days prior to the end of the monthly rental period. (If the number of days isn't filled in, at least 30 days notice is required to terminate a month-to-month tenancy.

**Failure to Provide Proper End of Term Notice or Intent to Move-Out.** In the event you fail to provide us with the required number of days of written notice of termination or intent to move-out at the expiration of the lease term, or any renewal thereafter, as required by this paragraph and paragraph 37, you acknowledge, understand and agree that you shall be liable to us for liquidated damages IN THE SUM OF $ __674.00__ (equal to 1 month's rent) in accordance with Fla. Stat. §83.575(2).

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__ , due on or before the date this Lease Contract is signed.

Any security deposit or advance rent you paid is being held in one of the following three ways as indicated below [Landlord check one option]:

☒ 1. In a separate NON-INTEREST bearing account for your benefit in the following bank: __BBVA Compass Bank__

whose address is __3560 University Club Blvd.__ __North Jacksonville, FL 32211__ ; OR

☐ 2. In a separate INTEREST bearing account for your benefit in the following bank: ____

whose address is ____

____

If an interest bearing account, you will be entitled to receive and collect interest in an amount of at least 75 percent of the annualized average interest rate payable on such account or interest at the rate of 5 percent per year, simple interest, whichever the landlord elects.

☐ 3. In a commingled account at the following bank ____

whose address is ____

provided that the landlord posts a surety bond with the county or state, as required by law, and pays you interest on your security deposit or advance rent at the rate of 5 percent per year simple interest.

____ Initials of Resident. Resident acknowledges receiving a copy of F.S. 83.49(3) which provides as follows:

(a) Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

*"This is a notice of my intention to impose a claim for damages in the amount of ____ upon your security deposit, due to ____ . It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to (landlord's address).*

If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the security deposit.

(b) Unless the tenant objects to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages.

(c) If either party institutes an action in a court of competent jurisdiction to adjudicate the party's right to the security deposit, the prevailing party is entitled to receive his or her court costs plus a reasonable fee for his or her attorney. The court shall advance the cause on the calendar.

(d) Compliance with this section by an individual or business entity authorized to conduct business in this state, including Florida-licensed real estate brokers and salespersons, shall constitute compliance with all other relevant Florida Statutes pertaining to security deposits held pursuant to a rental agreement or other landlord-tenant relationship. Enforcement personnel shall look solely to this section to determine compliance. This section prevails over any conflicting provisions in chapter 475 and in other sections of the Florida Statutes, and shall operate to permit licensed real estate brokers to disburse security deposits and deposit money without having to comply with the notice and settlement procedures contained in s. 475.25(1)(d).

5. **KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __2__ mailbox key(s), and ____ other access devices for ____ . Your apartment will be *(check one)*: ☐ furnished or ☒ unfurnished. See paragraph 9, Locks and Latches.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ __674.00__ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☐ at our online payment site, or
☐ at ____

Prorated rent of $ __65.22__ is due for the remainder of the *(check one)*: ☒ 1st month or ☐ 2nd month, on ____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless

Bunor Crawford, Qashawanda Lightner
© 2012, National Apartment Association, Inc. - 11/2012, Florida

12282012103909FL11030153

Page 1 of 7

BcC

BcC

BcC

Bc

authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the ___3rd___ day of the month, you'll pay an initial late charge of $ __50.00__ plus a late charge of $ __5.00__ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ __50.00__ for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

We and you agree that the failure to pay rent timely or the violation of the animal restrictions results in added administrative expenses and added costs to us, the same as if we had to borrow money to pay the operating costs of the property necessary to cover such added costs. We both agree that the late fee and animal violations provisions are intended to be liquidated damages since the added costs of late payments and damages in such instances are difficult to determine. We also both agree that the amount of late rent and animal violation fees charged are reasonable estimates of the administrative expenses, costs, and damages we would incur in such instances.

All of the foregoing charges will be considered to be additional rent.

7.  **UTILITIES.** We'll pay for the following items, if checked:

☐ water        ☐ gas      ☐ electricity  ☐ master antenna
☐ wastewater   ☐ trash    ☐ cable TV     ☐ other _____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected-- including disconnection for not paying your bills--until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. Resident shall not heat the apartment using gas-operated stoves or ovens which were intended for use in cooking.

Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Landlord, they will be allocated first to non-rent charges and to rent last. Failure to maintain utilities as required herein is a material violation of the Lease and may result in termination of tenancy, eviction and/or any other remedies under the Lease and Florida law.

8.  **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property and/or personal injuries due to theft, fire, rain, flood, hurricane, wind damage, water damage, pipe leaks and the like.

Additionally, you are [check one] ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

9.  **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

What You Are Now Requesting. You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.

☒ keyed deadbolt lock        ☒ doorviewer
☐ keyless deadbolt           ☒ sliding door pinlock
☒ sliding door bar

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

---

## Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.
A 60 Day written notice with intent to vacate is required and will only be accepted on the first of each month. Rent $ 624.00 utilities $ 50.00 total per month $ 674.00
See any additional special provisions.

11. **EARLY MOVE-OUT.** Unless modified by an addendum, if you:

(1)  move out without paying rent in full for the entire lease term or renewal period; or
(2)  move out at our demand because of your default; or
(3)  are judicially evicted.

You will be liable for all rent owed at the time and as it becomes due under the terms of your lease agreement until the apartment is re-rented.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment or apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. *Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the lease term or renewal period: (1) damage to doors, windows, screens, or any other property damage to the apartment or the premises; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.* We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** All property in the apartment or common areas associated with the apartment is (unless exempt under state statute) subject to a contractual lien to secure payment of delinquent rent. The lien will attach to your property or your property will be subject to the lien at the time you surrender possession or abandon the premises. For this purpose, "apartment" includes common areas associated with the apartment and interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

Removal After Surrender or Abandonment. We or law officers may, at our discretion, remove, dispose and/or store all property remaining in the apartment or in common areas (including any vehicles you or any

occupant or guest owns or uses) if you surrender, are judicially evicted, or abandon the apartment (see definitions in paragraph 42).

THE LANDLORD IS NOT REQUIRED TO COMPLY WITH s. 715.104. BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

*Storage.* We may store, but have no duty to store, property removed after surrender, eviction, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property.

14. **FAILING TO PAY RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, or any other rent due under this lease we may end your right of occupancy and recover damages, attorney's fees, court costs, and other lawful charges.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

Bunor Crawford, Qashawanda Lightner

© 2012, National Apartment Association, Inc. - 11/2012, Florida

1228201210391 0FL11030153



If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3--and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date--you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is

expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

17. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

---

## While You're Living in the Apartment

18. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

19. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited--except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude, and/or "No Trespass" from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

20. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; engaging in criminal activity that threatens the health, safety, or right to peaceful enjoyment of others in or near the apartment community (regardless of arrest or conviction); storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

21. **PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, recreational vehicles, and storage devices by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

22. **RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31, 37, or by separate

addendum, you won't be released from this Lease Contract for any reason--including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

23. **MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

(2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, (iii) relieved or released from active duty, (iv) after entering into the Lease Contract you receive military orders requiring you to move into government quarters or you become eligible to live in and opt to move into government quarters, (v) receive temporary duty orders, temporary change of station orders, or state active duty orders to an area 35 miles or more from the location of the rental premises, provided such orders are for a period exceeding 60 days.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after we receive the written notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. After your move out, we'll return your security deposit, less lawful deductions. If you terminate the Lease Contract 14 or more days before occupancy no damages of any kind will be assessable. If you or any co-resident is a dependant of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service.

24. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, *especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 6.*

Smoke Detectors. We'll furnish smoke detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector malfunctions to us. Neither you nor others may disable smoke detectors. If you damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us under state statute for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

Casualty Loss. We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. *We have no duty to remove any ice, water, sleet, or snow but may remove any amount with or without notice.* Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security



1228201210391lFL11030153

Bunor Crawford, Qashawanda Lightner

© 2012, National Apartment Association, Inc. - 11/2012, Florida

Page 3 of 7



personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Fire Protection.** Please check only one box: ☐ Fire protection is NOT available or ☐ Fire protection IS AVAILABLE. Description of fire protection available (not applicable unless the box is checked):

- ☐ Sprinkler System in apartment
- ☐ Sprinkler System in common areas
- ☒ Smoke detector
- ☐ Carbon monoxide detector
- ☒ Fire extinguisher
- ☐ Other (Describe): _____

**Building, Housing, or Health Codes.** We will comply with the requirements of applicable building, housing, and health codes. If there are no applicable building, housing, or health codes, we will maintain the roofs, windows, screens, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads, and the plumbing in reasonable working condition. However, we are not responsible for the repair of conditions created or caused by the negligent or wrongful act or omission of you, a member of your family, or any other person on the premises, in the apartment, or in the common areas of the apartment community with your consent.

25. **CONDITION OF THE PREMISES AND ALTERATIONS.** *You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties.* You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements and/or added fixtures to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**Pest Control.** We will make reasonable provisions for the extermination of rats, mice, roaches, ants, wood destroying organisms, and bed bugs. If you are required to vacate the premises for such extermination, we shall not be liable for damages, but rent shall be abated. If you are required to vacate in order to perform pest control or extermination services, you will be given seven (7) days written notice of the necessity to vacate, and you will not be required to vacate for more than four (4) days. We may still enter your apartment as provided in Paragraph 28 of this Lease and F.S. 83.53 or upon 12 hours notice to perform pest control or extermination services which do not require you to vacate the premises. You must comply with all applicable provisions of building, housing and health codes and maintain the apartment and adjacent common areas in a clean and sanitary manner. You must properly dispose of and promptly remove all of your garbage so as to prevent foul odors, unsanitary conditions, or infestation of pests and vermin in your apartment, adjacent common areas (such as breezeways), and other common areas of the apartment community.

**Waterbeds.** You are allowed to have a waterbed or flotation bedding systems provided it complies with any applicable building codes and provided that you carry flotation or renter's insurance which covers any damages which occur as a result of using the waterbed or flotation bedding system. You must provide us with a copy of the policy upon request. You must also name us as an additional insured at our request.

26. **REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility

lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. *Rent will not abate in whole or in part.*

If we believe that fire, catastrophic damage, extermination issues, mold and mildew or any habitability issues whatsoever is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

27. **ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

28. **WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

29. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 42.

Bunor Crawford, Qashawanda Lightner

© 2012, National Apartment Association, Inc. - 11/2012, Florida

1228201210391 2FL11030153



## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25;
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above or other material provisions of the lease, you may terminate this Lease Contract and exercise other remedies under state statute only as follows:

(a) you must make a written request for repair, maintenance, or remedy of the condition to us, specifying how we have failed to comply with Florida law or with the material provisions of this lease and indicating your intention to terminate the lease if the violation is not corrected within seven (7) days after delivery of the notice;
(b) after receiving the request, we have a reasonable time to repair or remedy the condition, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
(c) if our failure to comply with Florida law or material provisions of the rental agreement is due to causes beyond our control and we have made and continue to make every reasonable effort to correct the failure to comply, you may also exercise other statutory remedies.

All rent must be current at the time you give us notice of noncompliance.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; or (6) any illegal drugs or paraphernalia are found in your apartment.

**Termination of Rental Agreement - Your Failure to Pay Rent Due.** If you default by failing to pay rent when due and the default continues for three (3) days, not counting Saturday, Sunday, and court-observed legal holidays, after delivery of a written demand for payment of the rent or possession of the premises, we may terminate the rental agreement. Termination of this lease for non-payment of rent, or termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Termination of Rental Agreement - Your Failure to Comply with F.S. 83.52 or Material Provisions of the Lease.**

(1) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD NOT BE GIVEN AN OPPORTUNITY TO CURE or if your non-compliance CONSTITUTES A SECOND OR CONTINUING NON-COMPLIANCE WITHIN TWELVE (12) MONTHS OF A SIMILAR VIOLATION, we may terminate the lease by delivering written notice specifying the nature of the non-compliance and our intention to terminate the lease. Upon receiving such a lease termination notice without opportunity to cure or constituting a second violation within 12 months, you will have seven (7) days from delivery of the notice to vacate the apartment and premises. Examples of non-compliance which are without opportunity to cure include, but are not limited to, destruction, damage, or misuse of our or other resident's property by your intentional acts or a subsequent or continued unreasonable disturbance.

(2) If you default by materially failing to comply with F.S. 83.52 or material provisions of this lease, the rules and regulations, or any addenda (other than failure to pay rent due), and the non-compliance is of a nature that YOU SHOULD be given an opportunity to cure it, we may deliver a written notice to you specifying the nature of the non-compliance and notifying you that unless the non-compliance is corrected within seven (7) days of delivery of the notice, we may terminate the lease. If you fail to correct the violation within seven (7) days of receiving such notice or if you repeat same conduct or conduct of a similar nature within a twelve (12) month period, we may terminate your lease without giving you any further opportunity to cure the non-compliance as provided above. Examples of non-compliance in which we will give you an opportunity to cure the violation include, but are not limited to, unauthorized pets, guests, or vehicles, parking in an unauthorized manner, or failing to keep the apartment and premises clean and sanitary. We will also have all rights under Florida law and this lease to tow or remove improperly parked vehicles in addition to our remedy of terminating the lease for such violations.

Termination of this lease for non-compliance with F.S. 83.52 or material provisions of the lease, termination of your possession rights, filing of an action for possession, eviction, issuance of a writ of possession, or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by one hundred percent (100%) over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term--for up to one month from the date of notice of lease extension--by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline. Unless modified by Addendum, you will also be liable for all of our actual damages related to your breach of the Lease Contract.

**Choice of Remedies and Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. If we regain possession of the apartment as a result of your breach of the lease, or because you surrendered possession of the apartment, or because you abandoned possession of the apartment, or because we obtained possession through eviction proceedings, unless modified by Addendum, we may either (a) treat the lease as terminated and re-take possession FOR OUR OWN ACCOUNT; (b) re-take possession of the apartment FOR YOUR ACCOUNT and attempt in good faith to re-let it on your behalf; or (c) take no action to obtain possession or re-let the apartment and continue to collect rent from you as it comes due. If we take possession of the apartment for our own account, then you will have no further liability for rents under the remainder of the lease. If we take possession of the apartment for your account and attempt to re-let it, you will remain liable for the difference between the rental remaining due under the lease and the amount we are able to recover by making a good faith effort at re-letting the premises on your behalf. We are not required to make an election of which remedies we choose to pursue nor notify you of which remedies we will select.

## General Clauses

**33. MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent

12282012103913FL11030153

Bunor Crawford, Qashawanda Lightner

© 2012, National Apartment Association, Inc. - 11/2012, Florida

Page 5 of 7



owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All lease obligations must be performed in the county where the apartment is located.

RADON GAS: We are required by Florida Statute 404.056(5) to give the following notification to you. "Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon gas and radon testing may be obtained from your county health department."

WAIVER OF JURY TRIAL. To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

CONDOMINIUM OR HOME OWNERS ASSOCIATION RULES: To the extent applicable, you acknowledge that you have reviewed, understand and will abide by any Condominium or Home Owner Association Rules and Regulations ("HOA Rules") that may be in effect and promulgated from time to time. Your failure to abide by any HOA Rules is a material breach of this Lease Contract. A copy of the HOA rules is on file at the office.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

You affirmatively state that you are not a criminal sex offender.

Obligation to Vacate. Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

Although the property may currently be providing cable on a bulk basis to the resident, the property may, with 30 days notice to the resident, cease providing cable and the resident will contract directly with the cable provider for such services.

FORCE MAJEURE: If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

34. PAYMENTS. Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent– regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments. We do not have to accept and may reject, at any time and at our discretion, any third party checks or any attempted partial payment of rent or other payments.

35. ASSOCIATION MEMBERSHIP. We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

---

| Security Guidelines for Residents |
| --- |

36. SECURITY GUIDELINES. In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT
1. Lock your doors and windows—even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone—regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name, address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a statutory right to have that done, as long as you pay for the rekeying. You may not lockout anyone who has a lawful right to occupy the apartment.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your doorlocks, window latches, and other security devices regularly to be sure they are working properly.
10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management—in writing, dated and signed— any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management—in writing, dated and signed—any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

PERSONAL SECURITY—WHILE OUTSIDE YOUR APARTMENT

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

PERSONAL SECURITY—WHILE USING YOUR CAR
26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car—whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the backseat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

PERSONAL SECURITY AWARENESS
No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

---

| When Moving Out |
| --- |

37. MOVE-OUT NOTICE. Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire lease term if you move out early (paragraph 22) except under the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

• We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

• Your move-out notice must not terminate the Lease Contract sooner than the end of the lease term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice--unless you are in default.

38. MOVE-OUT PROCEDURES. The move-out date can't be changed unless we and you both agree in writing. You won't move out before the

12282012103914FL11030153

Bunor Crawford, Qashawanda Lightner

© 2012, National Apartment Association, Inc. - 11/2012, Florida



lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the fifteen (15) day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

39. **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

40. **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

41. **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 13; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related

charges under paragraphs 6 and 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/ manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for any charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date.

42. **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We will mail you your security deposit refund within fifteen (15) days after surrender or abandonment if we do not intend to impose a claim on the security deposit. If we do intend to impose a claim on the security deposit we shall give you thirty (30) days written notice by certified mail to your last known mailing address stating the reason for imposing the claim.

You have surrendered the apartment when all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

An apartment is also considered "abandoned" if you are absent from the apartment or premises for at least fifteen (15) days, unless the rent is current or you have notified us in writing of your intended absence.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

---

### Signatures, Originals and Attachments

43. **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures--one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☒ Animal Addendum
- ☒ Inventory and Condition Form
- ☒ Mold Addendum
- ☐ Enclosed Garage Addendum, dated _____
- ☒ Community Policies Addendum, dated _____
- ☐ Lease Contract Guaranty ( _____ guaranties, if more than one)
- ☒ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: _____ )
- ☒ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☒ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☐ Remote Control, Card or Code Access Gate Addendum, dated _____
- ☐ Intrusion Alarm Addendum, dated _____
- ☐ Other _____
- ☐ Other _____

> You are legally bound by this document.
> Read it carefully before signing.

**Resident or Residents** *(all sign below)*

*Blinor Crawford    28 DEC 2012*

_____

**Owner or Owner's Representative** *(signing on behalf of owner)*

_____

**Address and phone number of owner's representative for notice purposes**

5501 University Club Blvd N

Jacksonville, Florida 32277

(904) 745-5950

**Name and address of locator service** *(if applicable)*

_____

**Date form is filled out** *(same as on top of page 1)*    12/28/2012

BCC  SPECIAL PROVISIONS (CONTINUED FROM PAGE 2)

*State of TN*
*County of Knox*
*Sworn to + subscribed before*
*me this 28 day of December, 2010*
*Lindsa L Phillips*
*Notary*
*My Comission Expires 10-4-2014*

DEBRA L. PHILLIPS
STATE OF TENNESSEE
NOTARY PUBLIC
KNOX COUNTY